## STRIKER *vs.* KELLY.

Where a party sets up a title to land under a sale for non-payment of an as-
sessment for opening a street in the city of New-York, under the statute, (*Sess.
L. of* 1816, *p.* 115, § 2,) he must show◆the authority to sell, and must therefore
prove that the collector has made affidavit that the tax had been demanded &c.
as provided by the act.

The lease given to the purchaser, though it is made conclusive evidence of the reg-
ularity of the sale, does not prove the authority to sell.

The power conferred upon the supreme court under the laws for opening streets in
the city of New-York for the appointment of commissioners of estimate and
assessment and the confirmation of their reports, is not incompatible with the con-
stitutional prohibition against a justice of that court holding " any other office or
public trust." *Per* GARDINER, *President, and* LOTT, *Senator;* PORTER, *Senator,
contra.*

ON error from the supreme court. Striker sued Kelly in the
court below in covenant, for a quarter's rent reserved upon the
demise of certain premises in the twelfth ward of the city of
New-York. The defence was that the greater part of the de-
mised premises had been sold for a long term of years, pursuant
to proceedings taken by the corporation of the city for the non-
payment of an assessment for benefit, made before the execution
of the lease, upon the opening of the ninth avenue from Forty-
fifth-street to the Bloomingdale road; and that the title under
the sale had become absolute in the purchaser, to whom a lease
had been duly executed, before the rent claimed had become
payable. Upon the trial in the court below a verdict for the
plaintiff was taken by consent, subject to the opinion of the court
upon a case, with liberty to the court to enter judgment for the
plaintiff or defendant, &c. and with liberty to either party to
turn such case into a special verdict, or bill of exceptions. The
supreme court, after argument, gave judgment for the defendant;
upon which a bill of exceptions was settled, which forms a part
of the record returned to this court upon the writ of error. The
facts proved and the various exceptions taken, together with the
reasons assigned for the judgment, sufficiently appear in the
report of the case in 7 *Hill,* 9.

*R. Mott & S. Stevens,* for the plaintiff in error, among other points insisted that the power conferred upon the justices of the supreme court by the statutes concerning the opening of streets in the city of New-York constituted the holding by them of *another office,* contrary to the seventh section of article fifth of, the constitution of this state; and that the proceedings which resulted in the sale of the demised premises in this case were consequently void.   They also maintained that if the proceedings were otherwise valid, the failure of the defendant below to, prove that an affidavit shewing a demand and non-payment of the assessment had been made by the collector pursuant to the act of 1816, (*Stat.* 1816, *p.* 113, § 2,) was a fatal objection to the title derived under the sale; and that the lease which had been given was only evidence of the regularity of the sale, after the authority to make it, to which the affidavit was an indispensable requisite, had been first shewn.

*P. A. Cowdrey,* for the defendant in error.

PORTER, Senator.   The first inquiry in this case is, whether the statutes concerning the opening of streets in the city of New-York confer upon the justices of the supreme court *an office or place of trust* other than that which they hold as such' justices. In determining this question, it is important to consider the nature of the authority which these statutes confer on the judges, and the character of the jurisdiction which appertains to the court which they are appointed to hold.   If the powers respecting streets which are devolved upon the judges are such in their nature as properly belong to the court, there can be no objection to their being thus lodged; otherwise I apprehend they belong to another office or public trust.

The supreme court has repeatedly determined that in this whole class of cases the judges act as commissioners, and not in the execution of their judicial office, and that they derive all their authority from the statute referred to.   *In the matter of Beekman-street,* (20 *John.* 269,) Spencer, C. J. said: "It is true we act collectively and in term time, and a majority present

control the proceedings; but we act as commissioners, and in the same way and manner as we used, individually, to do under the insolvent act. The statute is our guide, and we must proceed by the rules and in the manner it prescribes. The general powers and jurisdiction of this court as regards the application now before us cannot be brought into exercise." In this opinion the supreme court declare not only that the judges act in these cases as commissioners, but that they cannot act as a court. They say that although the matter is brought by the statute within their jurisdiction, yet that it is a special, delegated power to be exercised according to the statute, and is not subject to their general judicial powers. As *the supreme court* they hold that they do not possess any control over the proceedings. According to this opinion their important functions are to be exercised in accordance with the provisions of the common law in the protection of the life, liberty and property of the citizen, and in supervising and controlling all the subordinate tribunals; and these in no respect assimilate to the duties of street commissioners. The directions of the statute are, it is said, to be followed as far as they go; and when they cease the powers and duties of the judges cease. The case of *Stafford* v. *The Mayor &c. of Albany*, (7 *John.* 541,) proceeds upon the same principle. An assessment for opening a street had been confirmed by the mayor's court of the city of Albany under a statute clothing that court with powers somewhat similar to those under consideration. The court subsequently assuming to act judicially, as if the subject matter had been under their control like other matters pending before them, made an order setting the proceedings aside for irregularity. The validity of the order came in question collaterally in the case referred to, and the supreme court in their opinion say: "The proceedings in question do not partake at all of the nature of judicial proceedings. There is nothing to be done by the mayor's court but to affirm or disaffirm the assessment." "The authority under which the mayor's court acted was specifically derived from the legislature and must be strictly pursued. When therefore the assessment was confirmed, the court had no further powers:

There is no analogy between this proceeding and that had before a court of record in the progress of a cause. In these cases the court act *quasi* commissioners. In the *Matter of Third-street*, (6 *Cowen*, 571,) Savage, C. J. in giving the opinion of the court says: "The report being once confirmed becomes irrevocable unless it be voluntarily waived by all the parties concerned. We do not act as a court in these matters, but as commissioners appointed by the legislature." Again, in the *matter of Canal-street*, (11 *Wend.* 154,) the same judge says: "When we are reviewing the proceedings of the commissioners of estimate and assessment," we act as commissioners, and "when once their report is confirmed by this court it cannot be opened and reviewed again in the same court. We cannot set aside these proceedings upon the merits any more than arbitrators can do so, after having signed and published their award." In the *matter of Mount Morris Square*, (2 *Hill*, 14,) the late Mr. Justice Cowen, after repeating with approbation the doctrine of the case of *Beekman-street*, above referred to, adds: "Our powers are likened to those of a commissioner under the insolvent act. Our award is therefore like that of any inferior magistrate having a limited jurisdiction, and we have no power to open it on motion any more than a justice would have to open a summary conviction before him." These cases and others which might be referred to, shew conclusively that the supreme court from the time the question first arose have in these cases considered themselves as acting as commissioners; and I think the argument in favor of that position cannot be controverted.

It is argued that the acts of the court under these statutes are of a judicial character, and that the cases referred to proceed upon the distinction between the general and ordinary jurisdiction of the court and the special and limited authority which is conferred upon it by the statutes. It need not be denied that the court in these matters acts judicially; for the admission of that position will not sustain the decision under consideration. There are many judicial duties which cannot constitutionally be thrown upon the supreme court. The surrogate in his court, the recorder's court, and courts martial proceed judicially, but

no one will pretend that the legislature could authorize the judges of the supreme court to hold these courts. If a statute should authorize the judges to hold the courts now held by justices of the peace and try the issues now determined in these courts, would not *another office* be conferred upon them? Could they be authorized to hold the court of common pleas in any county in the state? This will scarcely be pretended. The constitution has not conferred upon the supreme court all manner of judicial power. The general common law powers and jurisdiction of a supreme court of judicature of the state are recognized by the constitution; and it appears to me that when that instrument declares that the judges of that court shall " hold no other office or public trust," it is intended to limit their powers and duties to such as appropriately belong to that high tribunal, and that the prohibition extends to a judicial as well as any other office. The obvious design was to confine the labors, services and responsibilities of the judges who sit in that court inviolably to those judicial duties and powers which are inherent in the court, or which from analogy appropriately belong there. The powers and duties appertaining to it as the highest court of original common law jurisdiction in the state were well understood. They are sufficiently ample, and burthensome enough in themselves without the addition of other judicial powers. I do not deny that the legislature may apply those powers to new cases; but they must be such as come within the acknowledged scope of its general jurisdiction. It cannot enlarge or abridge. It may authorize the court to perform particular duties that it had never before performed; but they must be duties belonging to its department of the government. They must not only be judicial duties, but such judicial duties as appertain to that court in the exercise of its jurisdiction as the supreme court of judicature. The clause of the constitution in question is prohibitory, and forbids that any other powers shall be conferred upon the judges, or that any other duties shall be required of them than such as belong strictly to the supreme court of judicature. A natural jealousy is therein expressed, and also a will to confine those high offi

cers of the government to the exercise of their appropriate functions. If the legislature can authorize and require the supreme court to perform these duties of commissioners under the street law, because they are judicial in their nature, what hinders it from requiring them to perform a large portion of the duties of the canal board? for they are clearly judicial in their nature.

Again, the admitted fact that these proceedings are not of such a nature that they can be revised until they are brought before the court by a *certiorari,* and again passed upon and made a matter of record in that court, proves to my mind that these judges are executing some other trusts and duties than such as belong to the court. Indeed the prevailing opinion in the supreme court seems to concede that while performing the duties in question, the court is acting as "an inferior and limited court." This is also necessarily implied from the consideration that it is subject to the command contained in the *certiorari* to make return of their proceedings into the supreme court. This liability to review in the supreme court can only exist in the case of a subordinate tribunal, and of itself proves that it is a distinct jurisdiction. If then the judges while performing those duties of commissioners, form a distinct, inferior and subordinate tribunal, it follows necessarily that it must be another tribunal than the supreme court. If another tribunal, and the officers composing it are in fact the judges of the supreme court, how can it be said that they hold no " other office or public trust?" While executing that commission they are compelled to lay aside their character, and divest themselves of their powers as judges, and assume those of commissioners clothed with special and limited powers. There is no difficulty in the same individual holding two offices at the same time. The same person may be first judge of a county, and also surrogate of the same county; and he may hold different courts and exercise different powers without causing any confusion of ideas or of business. In the same manner the judges of the supreme court, if they were not prohibited by the constitution, might sit in and exercise all the powers of any inferior judicial tribunal. But while performing those duties, it would be a misnomer to call that

tribunal the supreme court. It would be inferior to it and subject to its supervision, and of course not the same tribunal. It cannot in any proper or admissible sense be said to be executing the same "office or public trust." It is possible that these commissioners may possess many of the attributes of a court, as is supposed by the chancellor in the case of *The President &c. of Brooklyn* v. *Patchen,* (8 *Wend.* 47;) but the question does not turn upon that fact—but rather upon the question whether it is inferior and subordinate, and consequently another court.

I cannot therefore come to any other conclusion than that the statutes which confer upon the judges of the supreme court the powers in question do profess to give them another office or public trust than that of judges of that court: and in this respect I am of opinion that they violate the constitution, and are void.

It remains to consider whether in other respects the sale of the demised premises was legal. The statute, (*Laws of* 1816, *p.* 114, § 2,) provides that when an assessment shall not be collected "and the collector shall make affidavit of his demanding the money two several times of such owner or owners of the said lands as may reside in the said city, and that they have neglected or refused to pay the same, &c. then and in any such case it shall and may be lawful for the mayor, &c. to take order for advertising the said lands and tenements, or any of them, for sale," &c.(*a*) The objection was distinctly taken on the trial that there was no proof of a demand of payment before proceeding to sell, nor any evidence that the collector had made the affidavit required by the statute. The objection was overruled; and it is now insisted that this defect was fatal to the defence. The answer which is given is that the same section declares that the lease to be executed to the purchaser "shall be conclusive evidence that the sale was regular according to the provisions of this act." The question then is: Suppose there was in fact no demand or affidavit as required by the act, does the

---

(*a*) If the owner cannot be found in the city an affidavit to that effect is to be made.

giving of the lease cure the defect? There are certain cardinal rules on this subject which I find no where better expressed than by Bronson, J. in *Sharp* v. *Spier*, (4 *Hill*, 86.) He says, " every statute authority in derogation of the common law to divest the title of one and transfer it to another must be strictly pursued or the title will not pass. This is a mere naked power in the corporation, and its due execution is not to be made out by intendment. It must be proved. It is not a case for presuming that public officers have done their duty; but what they have in fact done must be shown." The cases there cited abundantly sustain those positions. The section of the act above cited is the one that gives the power of sale: and that confers the power only upon a condition. The language is express—" whenever the collector shall make affidavit," &c. The object of the law was that there should be not only a regular assessment and non-payment, but also that the owner should have personal and official notice of the assessment and demand of payment; and that must be repeated to give him ample warning that he is in danger of losing his land. These were not meant to be an idle ceremony to be dispensed with or not at the pleasure of the corporation, but as a substantial protection against surprise: and this provision of the act shows how cautious and guarded the law is when the title of the owner of land is to be divested. This act is in derogation of the common law right of the owner, and is therefore to be construed strictly and must be strictly followed. By the terms of the act no sale could take place until the affidavit of the collector had been made. The affidavit is made as necessary as the assessment. The statute has made it a condition upon which the corporation may proceed to sell: and the courts have no power to dispense with it. It is no answer that the act has declared that the " lease shall be conclusive evidence that the sale was regular." It is not the regularity of the proceedings at the sale or immediately connected with the act of selling, that is sought to be impeached. The objection is that the foundation of the right to sell at all, however regular the proceedings at the sale, has not been shown by the proof. I cannot consider this part of

Striker *v.* Kelly.

the statute as dispensing with the affidavit any more than with the proof of assessment, or of any other important step in these proceedings. In my opinion the defendants failed to show a power to sell in the corporation : and for this reason also I think the judgment should be reversed.

GARDINER, President. The constitutional question presented in this case is one of great importance. The authority of the supreme court, which is now challenged, has been exercised for nearly forty years. Interests to an extent at this time difficult to estimate, have originated in and depend upon proceedings under statutes, the validity of which is now for the first time questioned. The high tribunal upon which these peculiar powers have been conferred, although at different times entertaining different opinions as to the character in which it acted, has uniformly assumed the constitutionality of the laws, and that it could rightfully exercise the powers thereby conferred. It is now, however, insisted that the act of 1813 authorizing an application by the corporation of the city of New-York to the supreme court for the appointment of commissioners of estimate and assessment is unconstitutional and void.

All it is presumed will agree, that the constitutional restriction relied upon on behalf of the plaintiff in error refers to the judges as individuals, and not to the court of which they are the officers. The object for which it was introduced into the constitution undoubtedly was to confine the individual to the discharge of his duties as a member of the court, and to prevent his being burthened with those of other offices or public trusts. It however left the legislature free to confer such additional powers upon the court as the exigencies of the public might require. Accordingly the chief justice, in the dissenting opinion, admits that if the case could be regarded as enlarging the jurisdiction of the court by conferring new judicial powers, it would be unobjectionable. The question would therefore seem to be whether the authority conferred by the statute was bestowed upon the supreme court, or upon the individuals who might happen from time to time to be the judges, to be executed by them as

commissioners appointed by the legislature. There can be no doubt as to the intention of the legislature. They designed to vest the authority in the court. By the act of 1813 (2 *R. L.* 409, § 178) the application for the appointment of commissioners of estimate and assessment is to be made "to the supreme court of judicature of this state." It is then made lawful for *said court* to make the appointment. The commissioners are to make a report and to give notice when it will be presented to *the court.* *The court*, again, is to hear what may be alleged against the report, and to confirm it or refer it again to the commissioners; and when finally approved it is declared to be conclusive, and the amount required to be paid becomes a lien upon the premises assessed, and may be collected by distress and sale. (*Id.* 421, § 186.) If by this statute the authority is not conferred upon the court in its legal character as a judicial tribunal, it is not, I think, in the power of language to do so.

The power in question is emphatically a judicial one, for it is an authority to hear, try and adjudge. I am aware that in one part of the act of 1818, (*Stat. p.* 205, § 5,) an application respecting these commissioners of estimate and assessment is authorized to be made to the supreme court " or any one of the justices thereof;" but the statute being in *pari materia,* it was not seriously contended that a different tribunal was indicated than that referred to in the former statutes. Besides, one of the justices may properly discharge these duties, because by the constitution one judge is competent to hold the court. The statute relating to referees confers upon the court powers in many respects similar to those under consideration. The court is authorized without the consent of the parties to appoint referees, who are to hear the evidence and in the first instance determine the questions of law and fact. Their decision may be reviewed by the court at the instance of either of the parties, and it may confirm the report and give judgment upon it, or may send it back for another trial. It might be objected with equal plausibility that the appointment of referees was an executive and not a judicial act, and that to countenance its validity would sanction an act of legislative encroachment. In the case of referees it may be said that the litigant parties are in

court; but a similar jurisdiction is conferred upon the court to re-
view the determination of arbitrators upon the mere agreement of
the parties. The referees it is true are officers of the court, but these
commissioners are also *quasi* officers, and may in like manner
be compelled to perform their duty by attachment. (*Matter of
Canal-street*, 11 *Wend.* 154.) The mode of acquiring jurisdic-
tion varies in each of the cases. The suit may be commenced
by *capias* or declaration in the case of a reference, by the agree-
ment of the parties and petition in the case of arbitration, and
under the statute in question, by an application to the court for
the appointment of commissioners.

That the legislature has a right to confer jurisdiction upon
the supreme court to conduct proceedings of the nature indicated
in this act cannot, it appears to me, be questioned. They are
analogous to proceedings *in rem* in admiralty, where the only
notice to the parties interested in the property is by advertise-
ment in a newspaper. Again, the practice under the statute
shews that the judges must have acted as a court. The com-
missioners were appointed by rule entered in the minutes of the
supreme court, reciting that a petition had been presented to *the
court*, and the order purports to be made by *the court*. The
report is *to the court*, and the order of confirmation is made by
it and is entered in the minutes; and it has the same effect as a
rule for final judgment in other cases in that court. In addition
to this the papers are placed on its files and certified by its clerk
under its seal. The same practice prevails in all the other
proceedings under the act. It would be an extraordinary
and peculiar feature, if mere statutory commissioners should
not only use the office, books, clerk and seal of the supreme
court, but should also assume the official designation and act
in the name of that tribunal. The practice however, in my
judgment, is entirely consistent with the provisions of the statute,
and I cannot doubt but that the sound conclusion upon the whole
matter is, that new powers of a judicial nature have been con-
ferred upon the supreme court to be executed by that court and
its judges and other officers in the same legal character in which
they transact their other judicial business.

I am satisfied also that the court in the exercise of its authority in these matters, as in all other cases, acts as a court of general and not one of limited jurisdiction. The constitution created a single and not a duplicate court; and it involves a useless confusion of ideas to regard it when performing one class of its duties as acting in an inferior and subordinate character, while in respect to all other matters it is confessedly a tribunal of supreme original jurisdiction. It is no answer to this view of the subject, that the duties of the court concerning streets must be performed in the manner particularly prescribed by the statute. It is only saying that the law must be strictly followed, a remark equally applicable to all courts and tribunals. To render the contrary argument available it must be shewn that the judges, when acting upon the business relating to streets, cannot exercise the ordinary powers of the court, so far as they are applicable ; and that they have no claim to the personal immunity, and the presumption in favor of their jurisdiction, which appertain to judges of superior courts of record. The practice adopted in these cases, already referred to, affords strong evidence of the right of the court to bring into exercise its ordinary powers. The case of *The President &c. of Brooklyn* v. *Patchen*, (8 *Wend.* 47—63,) in this court, which arose under a similar statute, is an authority in point. The opinion of the chancellor in that case is directly opposed to that of Spencer, C. J. in the case of *Beekman-street*, (20 *John.* 269 ;) and in the *matter of Canal-street*, before referred to, Savage, C. J., speaking of proceedings under the statute in question, says : "We act also *as a court* in many respects, and I think in all respects except in reviewing our own decisions." What court, I would respectfully ask. The statute speaks only of the supreme court, and to that tribunal alone is the power delegated. The presumption in favor of jurisdiction attaches to the proceedings of courts of general jurisdiction on account of the high character of the tribunal and the presumed ability of the judges. The reasons upon which the presumption is founded exist to the same extent in regard to proceedings under this statute as in other cases.

The practice prevailing in the supreme court of issuing a

*certiorari* to the judges, in order to review proceedings had before them in assessment cases is peculiar, and as it seems to me incongruous; but if I am correct in the positions already assumed, it will be unnecessary to examine the cases which are said to establish that practice. I can only say, that if such a writ had been awarded in this case, and a correct transcript of the proceedings under consideration had been returned, the return would have shewn that these proceedings were had before the same court which issued the writ. I am therefore of opinion that no constitutional provision has been violated in the proceedings relating to the assessment in question.

I am satisfied also that the order confirming the report of the commissioners of estimate and assessment was, under the circumstances disclosed at the trial, conclusive evidence of the regularity of the prior proceedings; and I should vote for the affirmance of the judgment of the supreme court but for the defect in the defendant's evidence, to which I will now advert.

The authority to sell on account of the non-payment of an assessment depends upon the performance of certain preliminary acts, which must in all cases be shewn to have been performed where title is sought to be established under such sale. It is indispensable that an affidavit should be made by the collector pursuant to the act of 1816, (*Stat.* 1816, *p.* 114, § 2.) The reasoning of the chief justice in the dissenting opinion given in the court below, seems to me so conclusive upon this branch of the case, that I do not think it necessary to add any further remarks. For this reason alone I think the judgment of the supreme court should be reversed.

Senators LESTER and LOTT delivered written opinions in favor of reversing the judgment of the supreme court upon the last point mentioned in the opinion of the president; and Senator LOTT declared that he concurred in other respects in the opinion delivered by Mr. Justice BEARDSLEY in the court below.

Senator JONES delivered a written opinion in favor of affirmance.

On the question being put, " Shall this judgment be reversed ?" the members of the court voted as follows :

*For reversal :* The PRESIDENT, and *Senators* BACKUS, BEEKMAN, BEERS, BOCKEE, DEYO, EMMONS, HAND, HARD, LESTER, LOTT, PORTER, SEDGWICK, SMITH, VARNEY and WRIGHT—16.

*For affirmance : Senator* JONES.

Senator LOTT then proposed the following resolution :

*Resolved,* That the making of the affidavit by the collector, as required by the act of 12th April, 1816, for the more effectual collection of taxes and assessments in the city of New-York, is an essential part of the power to sell for assessments or taxes under the provisions of that act ; and that the lease given by the corporation is not evidence that such an affidavit has been made so as to support the sale, without proof of the making of such affidavit before the premises were advertised for sale.

On the question being put upon adopting said resolution, all the members of the court present and voting, to wit, The PRESIDENT, and *Senators* BACKUS, BEEKMAN, BEERS, BOCKEE, DEYO, FOLSOM, HAND, LESTER, LOTT, PORTER, SEDGWICK, VARNEY and WRIGHT, (14) voted in the affirmative, and the resolution was accordingly adopted.

Judgment reversed.