## POWELL and others *vs.* TUTTLE and others.

A sale of mortgaged lands made by *one* of the commissioners under the "act authorizing the loan of certain moneys of the United States deposited with the state of New-York," (*Stat.* 1837, *p.* 121,) is irregular and void. Both commissioners must be present and concur in the sale.

Nor does a conveyance to the purchaser in which both commissioners subsequently unite render the sale valid.

The case of *King* v. *Stone*, (6 *John. Ch. R.* 323,) commented upon and overruled.

A special statute authority, under which a party may be divested of his title, must be strictly followed.

An authority to do acts merely ministerial or mechanical may, it seems, be delegated ; but not so, where the act involves the exercise of judgment or discretion.

ON the 29th of June, 1837, Wilmot Everitt, having borrowed of the commissioners for loaning certain moneys of the United States deposited with the state of New-York in the county of Chemung, the sum of $402, executed to the commissioners a mortgage upon a farm in the town of Chemung, to secure the payment of the amount with interest, according to the provisions of the act of April 4, 1837. On the 22d of May, 1840, Everitt executed to Samuel Williams, president of the Powell Bank another mortgage upon the same premises, together with other lands, to secure the payment of $10,000. The plaintiffs, Tho's Powell and others, were at the commencement of this suit the assignees and owners of the latter mortgage. Default having been made in the payment of the interest due upon the mortgage to the commissioners on the first Tuesday of October, 1842, the commissioners, on the 27th day of the same month advertised the premises to be sold at the court house in Elmira, on the first Tuesday of February then next, at 10 o'clock in the forenoon. The sale took place at the time and place appointed. No persons were present except George Kingsbury, one of the commissioners, and the defendant Stephen Tuttle. Kingsbury offered the premises for sale pursuant to notice, and Tuttle became the purchaser for $468,50, the amount due upon the mortgage for principal and interest. At the time of the sale Everitt resided upon the premises, 12 or 13 miles from Elmira.

Powell v. Tuttle.

He had prepared himself to pay the amount of the interest upon the mortgage and the cost of the proceedings, and left home for that purpose, in time to reach the place of sale before the hour at which it was to take place, but for the inclemency of the weather and the slow and difficult travelling, occasioned by the drifting of the snow. As it was, he reached the place shortly after the sale, and before any money had been paid by the purchaser, or the deed had been executed. He then offered to pay the interest and costs, but did not offer to pay the principal. Several other parcels of land were advertised by the commissioners to be sold at the same time, but the sale of these parcels, with one exception, was postponed until the afternoon of the same day. On a subsequent day, both commissioners executed to Tuttle a deed of the premises, as the purchaser thereof at the sale, and at the same time Tuttle delivered to the commissioners his mortgage upon the same premises, for the amount of the principal due upon the Everitt mortgage, and paid the interest and costs. Other facts appeared in the case, upon which various questions were raised and discussed upon the argument, but this statement will be sufficient to present the question decided by this court.

The bill was filed by the assignees of the mortgage to the Powell Bank, and Everitt, to be relieved from the conveyance executed by the commissioners to Tuttle. The cause was heard on pleadings and proofs before the vice chancellor of the sixth circuit, who made a decree, on the 6th of January, 1845, declaring the sale by the commissioners void, and directing the deed executed by the commissioners to Tuttle to be delivered up to be cancelled, and that Tuttle be perpetually enjoined and restrained from setting up, or in any manner insisting upon, his title, or any claim or interest in the premises, through or on account of his purchase. The decree also directed that the plaintiffs should within sixty days pay to Tuttle the amount he had paid to the commissioners, with interest, and that they should also pay to the commissioners the amount due upon the mortgage executed to them by Tuttle, and that upon such payments being made the mortgage executed by Tuttle should be can-

celled. Upon the failure of the plaintiffs to comply with these provisions of the decree, the bill was to be dismissed with costs to the defendant Tuttle. This decree was affirmed upon appeal at a general term of the supreme court, held in the fifth district on the 29th of January, 1849. From this decree of affirmance the defendants appealed to this court.

*B. D. Noxon,* for appellants. I. A sale by one of the commissioners of loans, for loaning the United States deposit fund, may be made without the presence of the other. The act of 4th April, 1837, does not expressly or by implication require the presence of both. The sale is entirely ministerial; there is no discretion; both assented to the sale by giving the deed; the notice of sale was by both. One may delegate his power to the other, so far as the sale is concerned. (3 *Hill,* 603, 4; *King* v. *Stone,* 6 *John. Ch.* 323; *Laws of N. York, 1808, vol.* 5, *p.* 595; *Downing* v. *Ruger,* 21 *Wend.* 178; 3 *East,* 192.)

II. Mere inadequacy of consideration is not a sufficient ground for setting aside a sale. (*White* v. *Damon,* 7 *Ves. jun.* 30; 8 *id.* 137, *note; Coles* v. *Frecothick,* 9 *Ves.* 246; *Burrows* v. *Lack,* 10 *id.* 470; *Livingston* v. *Byrne, in error,* 11 *John.* 555; *Williamson* v. *Dale,* 3 *John. Ch.* 290; *Amer. Ins. Co.* v. *Oakley,* 9 *Paige,* 259; *Seymour* v. *De Laney,* 6 *John. Ch.* 222; *S. C. in error,* 3 *Cow.* 445; *Rogers* v. *Murray,* 3 *Paige,* 393.)

III. There is no allegation of fraud in the complainants' bill, and without such allegation they cannot avail themselves of an inference of fraud. (*James* v. *McKernon,* 6 *John.* 543; *Woodcock* v. *Bennett,* 1 *Cowen,* 734; *Lyon* v. *Tallmadge,* 14 *John.* 516; *Story's Eq. Pl.* 24, § 28; 6 *Sim.* 565; *Gordon* v. *Gordon,* 3 *Swanst.* 472; *Forsythe* v. *Clark,* 3 *Wend.* 653; *Stuart* v. *F. & Mech. Bank,* 19 *John.* 505.)

IV. There was no accident in this case by which the court would be authorized or justified to set aside the commissioners' sale. (*Cooper's Pl.* 130; 6 *Vesey,* 73 *to* 88; 2 *Ch. Cas.* 217; 1 *Ves.* 524, 540; 3 *Anst.* 687; *Str.* 763; 2 *Ld. Raym.* 1477; 1 *Fonbl. Eq.* (*Dublin ed.* 1793) *b.* 1, *ch.* 1, § 3, *p.* 17; 1 *Ch. Ca.* 228; 1 *Bl. Com. Intr.* § 3; 20 *Wend.* 198; 1 *Story's Eq.* § 96;

*id.* § 513; *Paradym* v. *June, Aleyn,* 27; *Roberts* v. *Beatty,* 2 *Penn. Rep.* 67, 8, 9.)

*J. A. Collier,* for respondents. I. If the mortgage sale under which Tuttle purchased had been in all respects regular, yet, as Everitt left home in time, but for accidental circumstances, to have reached the place of sale, prepared, and for the purpose of paying the interest and costs, and was detained only by the unusual and unexpected state of the roads, and the severity of the storm; or if, arriving in season, the commissioner and bidder could not be found at the court house until after the sale took place; considering the value of the property, and the relation in which the parties stood, a court of equity, whose peculiar province it is to relieve against accidents and mistakes, should grant relief in a case like this, and open or vacate the sale. (18 *Wend.* 611; 13 *id.* 224; *Tripp* v. *Cook,* 26 *id.* 143, 153; 3 *John. Ch.* 332; 4 *id.* 118.)

II. One commissioner had no power to act, but the presence and concurrence of both were required in all their official acts. The sale was irregular and void on that ground. (*Laws of* 1837, *p.* 121, § 2; 124, § 13; *p.* 127, § 23; 129, § 32; 133, §§ 45, 46; *p.* 134, § 53; 1 *Bos. & Pull.* 229, 236; 6 *John.* 39, 41; 2 *R. S.* 555, § 27; 21 *Wend.* 178, 185, 182; 3 *Edw. Ch. R.* 399; *Laws of* 1832, *p.* 180; 2 *R. S.* 3d *ed.* § 375; *Doughty* v. *Hope,* 1 *Comst.* 79; 6 *John. Ch.* 323.)

Harris, J. The first, and as it appears to me the vital question in this case is, whether the power to sell conferred by statute upon the commissioners, has been well executed. But one of the commissioners was present at the sale. The plaintiffs in sist that the power of sale is vested in the commissioners jointly, and that in the absence of one, no valid sale could be made by the other. On the other hand, the defendants contend that, the sale being a ministerial act, one commissioner might delegate to the other the power to sell, and, in this instance the execution of the deed to the purchaser is evidence of such delegation, and a ratification of the sale by the absent commissioner. Whether

the commissioner acted discreetly in making the sale, or whether he should have kept the sale open, as he did in other instances, until afternoon, is not now to be considered. There is no allegation of fraud or collusion in the bill. The sole question is, whether the commissioner had authority to make the sale *when, and as he did.*

In the terms of the statute itself, there is certainly nothing which requires, or indeed seems to favor the construction for which the defendants contend, and which is necessary in order to sustain this sale. The 30th section of the act (*Sess. Laws of* 1837, *p.* 129) declares, that upon the neglect of the borrower to pay the yearly interest, &c. the commissioners shall be seised of an absolute and indefeasible estate in fee in the lands, but the mortgagor, his or her heirs or assigns, shall be entitled to retain possession of the premises until the first Tuesday of February thereafter, and to redeem the same as provided in the act. The 31st section requires the commissioners to advertise such premises to be sold on the first Tuesday of February then next, at the court house. The 32d section directs the commissioners to expose the lands described in the mortgage foreclosed, to sale at public vendue, on the first Tuesday of February, and upon such sale to convey the lands to the highest bidder. By the 34th section the commissioners are authorized at any time, before the premises are actually struck off, to postpone the sale at their discretion, for the purpose of inquiring into the value of the premises. In all these provisions, relating to the sale, as well as in every other provision of the act, involving the powers and duties of the commissioners, the legislature seems to have contemplated the presence and participation of both commissioners in every official act. I think it very clear, that it was intended to secure, in every essential act to be performed by the commissioners, their joint deliberation and united judgment. When a duty merely mechanical is to be performed, as in the case of fixing up the advertisement of sale, the commissioners are authorized to CAUSE such duty to be performed. But when any act is to be done, which involves, in any degree, the exercise of discretion, it seems to have been the policy and purpose

of the legislature, to secure the benefit of the joint exercise of such discretion by the commissioners themselves. It is a familiar rule of law, that a special authority must be strictly pursued. When such authority is prescribed by statute, and when, in its exercise, it operates to divest the citizen of his property, courts can not be too sedulous in confining it within the boundaries which the legislature have thought fit to prescribe. At this day, and in this country, especially, the protection of private rights demands this safeguard ; and he who will review the adjudications of our courts, involving this principle, will be interested to observe with what uniformity and increasing jealousy the exercise of such a power has been restricted to its own specified limits. (*Sherwood* v. *Reade*, 7 *Hill* 431; *Striker* v. *Kelly*, *id.* 9 ; *Same case in error*, 2 *Denio*, 323 ; *Sharp* v. *Spier*, 4 *Hill*, 76 ; *Downing* v. *Ruger*, 21 *Wend.* 178.) In the latter case, Cowen J. says, " The rule seems to be well established, that in the exercise of a public as well as private authority, whether it be ministerial or judicial, *all* the persons to whom it is committed must confer and act together, unless there be a provision that a less number may proceed."

If it were important to vindicate the wisdom of the legislature in omitting to authorize the commissioners to delegate their power to sell to a third person or even to one of themselves, such vindication might be found in this very case. Without referring in detail to the circumstances, I feel warranted in saying that they were such as required the commissioner in the exercise of a fair and reasonable discretion, at least to hold the sale open for a short season. A farm worth $5000 was about to be sold, irredeemably, for less than $500. The commissioner had a few days before been apprised by the owner, and by his son-in-law also, that it was their intention to pay the amount requisite to prevent the sale, before it should take place. All the witnesses who speak upon the subject agree that the weather was extremely inclement. The commissioner had every reason to believe that Everitt, like others interested in property advertised to be sold on the same day, had been prevented by the severity of the storm, and the bad condition of the roads, from

reaching the place of sale at the hour appointed. Under such circumstances, I can scarcely conceive that another commissioner would have concurred in the propriety of hurrying off the sale at a sacrifice so enormous. The plaintiffs have not put their claim to relief upon the ground of an abuse of the discretion vested in the commissioner, but I do not deem it inappropriate to say, that whatever may have been his motive, the manner in which the commissioner conducted the sale does not commend the transaction to approbation. Greater regard for the interests of those whom he was about to divest of their property would have been entirely compatible with a faithful discharge of his public trust. He owed a duty as well to the mortgagor and his subsequent mortgagees, as to the state. If the property was to be sold, they were entitled to the surplus moneys, and had a right to a reasonable exertion on the part of the commissioners to prevent unnecessary sacrifice. I have thus referred to the circumstances attending the sale, not as a ground upon which the question under consideration can be decided, but to show that the sale authorized by the statute may, and sometimes does, involve an important exercise of discretion, and that it was not an idle thing for the legislature to require both commissioners to be present for that purpose. It was said by an eminent jurist, more than thirty years ago, that "sales of real property by public officers of one description or another, had become so frequent, and had excited such active cupidity, and such a spirit of speculation, that there was very great danger of injustice, unless the checks and guards provided by law were strictly supported." (*Dunning* v. *Smith*, 3 *John. Ch.* 344.) Subsequent experience authorizes us to repeat the remark, as emphatically applicable to the present condition of things in our state and country.

The legislature itself has repeatedly given a practical construction to the provision of the statute under consideration. The 32d section is, in substance, and very nearly in terms, the same as the 21st section of the first loan office law, entitled "an act for emitting the sum of two hundred thousand pounds in bills of credit, for the purposes therein mentioned," passed April

18, 1786. By the latter section, the loan officers were required to expose the lands described in the mortgages foreclosed to sale at public vendue on the third Tuesday of September, yearly. By the 20th section of the same act, the sale was required to be made at the court house of the county where the lands were situated. After the passage of the act of 1786, the counties of Albany and Montgomery were each divided, and, as the sales under loan office mortgages must be made on a particular day, and must also be made at the court house of the county where the lands were situated, it might become impracticable for the loan officers to discharge their duty by selling on the same day at the court house in different counties. To obviate this difficulty, the legislature in 1791 passed an act authorizing the loan · officers of Albany and Montgomery, if it should so happen that they could not attend at the different sales on the day specified, to adjourn any sale, by advertisement, to a further day, not exceeding fourteen days. (1 *Greenl. L.* 247; 2 *Id.* 367.) It is obvious that this provision, in respect to the two counties which had been divided, would have been unnecessary, if it had been understood that the requirement of the statute would have been satisfied by the presence of one of the loan officers at the sale. But as it might be impossible for both loan officers to attend sales to be made on the same day in different counties, the legislature deemed the law necessary.

The 16th section of the loan act of 1792, (3 *R. S.* 209,) and the 18th section of the loan act of 1808, (3 *R. S.* 224,) are each the same in terms, as the 32d section of the act of 1837. In 1832 a law was passed relative to the loans under the acts of 1786, 1792 and 1808, the 9th section of which is as follows: " Whenever any county in which loans may have been made, pursuant to either of these acts authorizing loans of moneys to the citizens of this state, shall have been divided since the passing of the act under which such loans were made, and whenever in such case it shall be necessary for the commissioners of loans, in any one year, for default in the payment of principal or interest of any such loans, to sell lands in two counties, it shall be lawful for *one* of the commissioners of loans under

whose care any mortgage given for such loan may be, to attend at, and conduct the sale of the mortgaged premises ; and such sale so conducted shall be valid and effectual as if made by *both* of said commissioners." (*Sess. L. of* 1832, *p.* 180.) Here we have a clear legislative declaration of the necessity of the at tendance of both commissioners to make a valid sale under either of the existing loan acts of this state, and an expressed unwillingness to dispense with such attendance, except in a specified case, where by the terms of the law sales were required to be made, under the authority of the same commissioners, in different counties, on the same day.

The only adjudged case which seems to favor the construction for which the defendants contend is that of *King* v. *Stow*, (6 *John. Ch.* 323.) That was a case of sale under the loan act of 1808. One ground upon which it was insisted that the sale was void was, that one of the commissioners was not present when the sale was made. The learned chancellor admits " the better construction of the act to be, that it is the duty of both commissioners to be present at the sale, in order to superintend it, and to see that it is conducted with discretion and fairness." But he adds, " I do not see sufficient reason to conclude that the validity of the sale, if otherwise fair, can be affected by the absence of one of the commissioners at the time of the outcry by the auctioneer and the fall of the hammer." Again he says, " it is to be presumed that the sale was fairly made and conducted, and that the presence of the commissioner who was absent would not, in fact, have been of any utility, or have affected the course of the proceeding." The chancellor himself seems here, for the moment, to have lost sight of the important principle which he had so eloquently announced in *Dunning* v. *Smith*, that the checks and guards provided by law against abuse in the sales of real property by public officers, must be strictly supported to prevent the injustice which might otherwise result from the active cupidity and the spirit of speculation excited by the frequent occurrence of such sales, and to have been led away by the inquiry whether, in that particular instance, there had been any unfairness. He declares that it was the duty of both

commissioners to be present, and yet, because it is to be presumed that the sale was fairly made, and that the presence of the absent commissioner would not in fact have been of any utility, the sale is to be upheld and declared valid. · Such reasoning, (I say it with the profoundest reverence for the name and authority of the great jurist whose decision I thus venture to question,) seems to me entirely inconsistent with the cardinal principle so well stated by Justice Bronson, in *Sharp* v. *Johnson*, (4 *Hill*, 99,) that "when lands are to be taken under a statute authority, in derogation of the common law, every requisite of the statute, having the semblance of benefit to the owner, must be strictly complied with." If the course of proceeding prescribed by law has not been pursued, of what avail is it that "the sale was fairly made and conducted?" If the legislature have thought fit to make the presence of both commissioners a condition precedent to their authority to sell, how can the fact that there was nothing "otherwise" unfair, give validity to a sale made by one commissioner in the absence of the other? It might, perhaps with equal truth, be presumed, that if neither commissioner had attended, and in their stead they had employed a constable or auctioneer to make the sale, it would have been "fairly made and conducted." In the language of Chancellor Kent, it might be said, that "the presence of the commissioners would not in fact have been of any utility or have affected the course of the. proceeding." Yet who will pretend.to say that, however fair, such a sale would have the effect to vest in the purchaser a valid title? It is not for the public agent, nor yet for the courts, to say that any course of proceeding other than that prescribed by law, will do just as well. Those who are invested with the power of transferring one man's property to another, must pursue their authority with precision, or what they do will be invalid. For myself, I can perceive no difference, in legal effect, between a sale made by one commissioner without the presence or authority of the other, and a sale made by a stranger. Indeed it seems to me that if the sale made by the stranger were made upon the appointment of both commissioners, its validity might be more plausibly

maintained, than that made by a single commissioner, though it be subsequently ratified by his associate.

The case of *The People* v. *The Commissioners of the Canal Fund*, (3 *Hill*, 599,) was cited upon the argument, as furnishing an adjudication analogous in principle, to that for which the defendants contend. In that case an appeal had been taken by an acting canal commissioner, having charge of the section of the canal upon which the claim for damages arose, from the decision of the canal appraisers. It was contended, by the relators in that case, that a single commissioner could not make a valid appeal. The statute, in terms, gives the appeal to "the canal commissioners," in the plural. Notwithstanding this, it was held that the legislature intended to give the right of appeal to each acting commissioner, in cases arising in his particular district. Besides, it was clearly competent for the canal commissioners to employ one of their board, or an attorney, or any other person, to institute and prosecute the appeal. It was in the nature of a suit, and it did not lie with those whose interests were adverse, to question the authority of those who assumed to act for the canal commissioners. The analogy between this case and that under consideration, if any exists, is certainly not very obvious.

*Downing* v. *Ruger*, too, was a case where one overseer of the poor, in the name and on behalf of both, made application, according to law, for process. It was held that the duty being strictly ministerial in its character, one might act alone as the agent or deputy of both, with the other's assent. " Can there be a doubt," asks Justice Cowen, "that overseers of the poor, in prosecuting under the excise law, or otherwise appearing as parties, may make an attorney ?" In that case, as well as in that of *The People* v. *The Commissioners of the Canal Fund*, the proceeding in question did not affect the rights of other persons, farther than to institute legal proceedings which might result in an adjudication affecting such rights.

The only other cases cited by the defendants' counsel in support of the validity of a sale by one commissioner, without the presence of the other, are *The King* v. *Forrest*, (3 *D. & E.* 38,)

and *The King* v. *The Inhabitants of Hamstall Ridware*, (*id.* 380.) In the former of these cases, a warrant, appointing over-seers of the poor of the parish, had been signed by four justices. It appeared that it had been signed by one of the justices, and had then been sent by him to the other three, who separately signed it, at their respective houses, no two of them having signed it in the presence of each other. It was held that to make the appointment good, the justices should have acted to-gether. Lord Kenyon said, " This is not merely a *ministerial* act ; if it were, like the signing of a rate, that might perhaps vary the question. But it is a *judicial* act, wherein the justices are to exercise a discretion." In the other case cited, an indenture of a parish apprentice had been assented to by two justices, but not at the same time, or in the presence of each other. Lord Kenyon said, " The rule has been long settled to be, that the concurrence of justices together is not necessary where the act to be done is merely *ministerial,* but they must confer together and form a joint opinion, where the act is of a *judicial* nature."

The only bearing which these decisions can have upon the case in hand, is, that they recognize the distinction between *ministerial* and *judicial* acts. It might well be that in a case where the duty to be performed is purely mechanical, requiring no exercise of discretion, or judgment, such duty, when assigned to two persons, might be performed by them separately, or by one of them, with the assent of the other. But, even then, where, as in the case before us, the legislature has imposed that duty upon two, I should have some difficulty in coming to the conclusion that it might, under any circumstances, be performed by one. But the conclusive answer to the argument is, that the duty to be performed at the sale is not *exclusively ministe-rial* in its character. So far as it is, it may undoubtedly be delegated. The commissioners may, for example, employ an auctioneer to proclaim the sale, and to receive bids, but they must themselves determine when to commence the sale, and how long it shall be kept open, and whether, under the 34th section of the act, the sale shall be, postponed. These, and other similar questions, which may arise at the time of the sale,

are so far judicial in their character, as to require the presence of both commissioners for their determination.

I am satisfied that it is the true construction of the statute, and was the intention of the legislature, that both commissioners should be present at the sale, ready to exercise their united judgment, as occasion may arise. It is a substantial require-ment, and has not been complied with. My opinion, therefore, is that the decree of the supreme court should be affirmed.

Decree affirmed