### LEGGETT *vs.* ROGERS.

A deed executed by the comptroller to a purchaser, upon a sale of lands for taxes, which purports to be given in pursuance of the statute relative to the assessment and collection of taxes, and recites a sale of the land for taxes, to the grantee, by virtue of that statute, is valid, although it is not executed in the name of *the people.*

An error in the notice given to the occupant, on a sale of lands for taxes, as

Leggett v. Rogers.

to the amount claimed to be due for taxes, per centage, &c. will not vitiate a deed executed by the comptroller to the purchaser at the sale.

A deed from the comptroller, conveying lands sold by him for taxes, is not even *prima facie* evidence that the preliminary steps required by law to give that officer authority to sell, have been complied with. And without proof of these, the deed is unavailing to the grantee, in an action of ejectment brought by him to recover the premises. CADY, J. dissented.

THIS was an action of ejectment brought to recover seventy-six acres of land, being lot number one in Abeel's three thousand acres patent; and was brought to trial on the first Monday of February, 1849, before the Hon. John Willard, one of the justices of the supreme court, in the county of Warren.

The plaintiff offered in evidence a conveyance from the comptroller, under his hand and the seal of his office, dated on the 7th day of October, 1845, conveying to the plaintiff the said parcel of land; which deed on its face purported to have been given in pursuance of chapter 13 of the first part of the revised statutes, and recited a sale for taxes in the month of June, 1843, and purported to be made between Azariah C. Flagg, comptroller of the state of New-York, of the first part, and the plaintiff of the second part, and concluded as follows: "In witness whereof the said party of the first part, as comptroller for the time being, hath hereunto set his hand, and caused the seal of his office to be affixed, the day and year first above written." The deed was executed in the presence of Philip Phelps, deputy comptroller, and subscribed by him as a witness.

The defendant's counsel objected to the said conveyance being read in evidence, because, as he alledged, it was not given in the name of the people of the state of New-York. The objection was overruled, and the defendant's counsel excepted.

The plaintiff then offered in evidence a copy of a notice and affidavit as follows:

"State of New-York, Warren county, ss. To Simon B. Russell of Bolton in said county. Please to take notice that the following described land, to wit, lot number one in Abeel's three thousand acre patent in said town of Bolton, and which at the time of conveyance hereinafter mentioned was and yet is in your

actual occupancy, was sold for taxes by the comptroller, and conveyed as provided in the third article, title third, and chapter thirteenth of the revised statutes of said state, to Thomas A. Leggett of Chester, in said county of Warren. The amount of the consideration money, to wit, $8,04 mentioned in the conveyance, with the addition of thirty-seven and a half per cent on such amount, and the addition of fifty cents, the sum paid for the comptroller's deed, are in the aggregate $17,09; and unless the last mentioned sum $17,09, shall be paid into the treasury for the benefit of the said grantee Thomas A. Leggett within six months after the service of this notice, the said conveyance of the said comptroller will become absolute, and the occupant and all others interested in the said land be forever barred from all right or title thereto. Dated at Chester, the 12th day of November, A. D. 1845.        Thos. A. Leggett."

"State of New-York, Warren county, ss. Joseph Woodward of the town of Warrensburgh, in said county, being duly sworn, says that on the 12th day of November, A. D. 1845, in said county, he served a notice of which the above is a true copy, or duplicate, personally, by delivering the same to the within named Simon B. Russell, the person occupying the land therein described.        Joseph Woodward."

"I certify that the above oath or affidavit was taken before me in due form of law, on the said 12th day of November, 1845, at Warrensburgh, by the above named deponent, who is credible.        Geo. Richards, Justice of the Peace."

To which was attached certificates as follows:

"I certify that I have compared the preceding copy of a paper on file in this office with the original, and that the same is a correct transcript therefrom and the whole of the said original.

In testimony whereof I have hereunto subscribed my name and caused the seal of my office to be affixed, the 12th [L. S.] day of August, 1848.

       Philip Phelps, Dep. Comptroller.

"State of New-York. Comptroller's Office. I certify that it appears to my satisfaction, that on the 12th day of November,

Leggett v. Rogers.

1845, Thomas A. Leggett caused such a notice as is required by article third, title third, chapter thirteenth of the first part of the revised statutes, to be served on Simon B. Russell, as the occupant of lot number one of Abeel's patent 3000 acre tract, sold by the comptroller for taxes in 1843, and said Thomas A. Leggett caused a copy of said notice, together with an affidavit of service, to be filed in this office on the 15th day of November, 1845.

And I further certify, that the moneys required to redeem the same have not been paid into the treasury for that purpose.

In witness whereof I have hereunto set my hand and affixed the seal of my office, this 15th day of June, in the year of [L. S.] our Lord 1846. A. C. FLAGG, Compt."

The defendant's counsel objected to the reading of the said copy of notice in evidence, because, as he alledged, it required the payment of too large a sum, to wit, $17,09 ; that said notice was not a compliance with the statute in relation to notices to be given by the grantee of lands sold by the comptroller for taxes which were occupied at the time of the conveyance, inasmuch as it required the payment of more than the consideration mentioned in the said deed, and thirty-seven and a half per cent in addition to such consideration, and the further sum paid for the comptroller's deed; that the sum required to be paid by said notice, in order to redeem, was thirty-seven and a half per cent per annum on the amount of said consideration, instead of thirty-seven and a half per cent on said consideration, irrespective of time.

It was admitted by the plaintiff's counsel that the lands mentioned in said deed and notice were occupied, at the time said conveyance was executed, by Simon B. Russell, who continued to occupy the same until Jackson went into possession; that said notice was the only one served by or on the part of the plaintiff, under the statute.

The said objections severally were overruled by the judge, and the defendant's counsel excepted to each and every of said decisions, before said papers were read in evidence.

The plaintiff proved that before the commencement of this

Leggett *v.* Rogers.

action, one Jackson was by the defendant's agent put in possession of the said premises, by cultivating the same and residing with his family in the dwelling house thereon. The plaintiff then rested his cause, and the defendant's counsel moved to nonsuit the plaintiff upon the grounds above stated, and also on the following grounds : 1. That it was necessary for the plaintiff to prove the preliminary acts required by the statute to be performed prior to the notice of sale and sale by the comptroller for taxes. 2. That the comptroller's deed was not evidence of his authority to sell the lands. 3. That it was necessary for the plaintiff to prove an assessment of the taxes upon the lands sold ; the return of said lands for the non-payment of the tax to the county treasurer ; the transmitting of the collector's account of unpaid taxes, and the collector's affidavit, by the county treasurer to the comptroller ; and the transmitting by the comptroller to the county treasurer of the list of lands charged with taxes and liable to be sold, and generally all other matters precedent to the notice of sale required by the statute.

The judge overruled each and every of the grounds upon which the defendant's counsel moved for a nonsuit ; to which decisions and each and every of them the defendant's counsel excepted. And thereupon the judge directed a general verdict for the plaintiff to be taken, subject to the opinion of the court, pursuant to the 38th rule of this court. A verdict was accordingly taken for the plaintiff.

*W. Hay,* for the plaintiff.

*E. H. Rosekrans,* for the defendant.

HAND, J. The statute does say that the comptroller shall " execute to the purchaser, his heirs or assigns, in the name of the people of this state, a conveyance," &c. (1 *R. S.* 411, § 80.) But this deed, although not in so many words " in the name of the people of this state," is substantially so. It is by their comptroller ; it recites the statute and the proceedings generally ; and that the land had been sold by virtue of this very statute ;

Leggett v. Rogers.

and that by the authority thereof the deed is given. I do not think the deed void, because it does the same thing without using the precise phraseology of the statute.

Nor does the alledged error in the amount mentioned in the notice, vitiate. It answered the object intended; it gave notice of the sale, and the time of redemption, and the consequences of neglect. It would be too much, I think, to hold that a trifling mistake in the amount specified in the notice, rendered that nugatory.

The great point in the case is, as to the effect to be given to the comptroller's deed.

There is no doubt but that, ordinarily, to divest the owner of land by a sale for taxes, every preliminary step must be shown to be in conformity with the statute. It is a naked power, not coupled with an interest, and every prerequisite to the exercise of that power, must precede it; and the deed is not even *prima facie* evidence that these prerequisites have been complied with. (*Williams* v. *Peyton's Lessee*, 4 *Wheat.* 77. *Stead's Ex'rs* v. *Course*, 4 *Cranch*, 403. *Rollendorf* v. *Taylor*, 4 *Peters*, 349. *Gaines* v. *Stiles*, 14 *Id*. 322. *Bloom* v. *Burdick*, 1 *Hill*, 130. *Jackson* v. *Shepard*, 7 *Cowen*, 88. *Sharp* v. *Spier*, 4 *Hill*, 76. *Sharp* v. *Johnson*, *Id*. 92. *Stryker* v. *Kelly*, 2 *Denio*, 323. *Doughty* v. *Hope*, 3 *Id*. 594; *S. C.* 1 *Comst.* 79. *Varick* v. *Tallman*, 2 *Barb. Sup. C. Rep.* 113. *Tallman* v. *White*, 2 *Comst.* 66.) The statute declares that a conveyance by the comptroller "shall be conclusive evidence that the sale was regular, according to the provisions of this chapter." (2 *R. S.* 412, § 81.) And if the land is not redeemed, the conveyance becomes "absolute, and the occupant and all others interested in the said lands shall be forever barred of all right and title thereto." Notwithstanding this strong language, it has been held by this court, and substantially by the court of appeals, that the comptroller's deed is not even *prima facie* evidence of the preliminary steps giving authority to sell; and that, without proof of these, the deed is unavailing. (*Varick* v. *Tallman*, 2 *Barb. Sup. C. Rep.* 113. *And see Dike* v. *Lewis*, *Id*. 344; *S. C.* 4 *Denio*, 237. *Tallman* v. *White*, 2 *Comst.* 66. *Stryker* v.

*Kelly,* 2 *Denio,* 323 ; *S. C.* 7 *Hill,* 9.) The leading case is *Stryker* v. *Kelly,* decided in the court for the correction of errors in 1845. That arose upon a tax sale in the city of New-York, and upon a statute declaring the lease given on a sale for taxes should "be conclusive evidence that the sale was regular according to the provisions of this act." It was held, reversing the judgment of the supreme court, that the party upholding the lease must show that the collector made an affidavit that the tax had been demanded, &c. as required by the act. That the lease did not prove the power to sell. One senator seems to have thought that it proved only the regularity of the proceedings at the sale, or those immediately connected with it. Ruggles, J. in delivering the opinion of the court of appeals in *Tallman* v. *White,* (*supra,*) says 'the comptroller's deed is conclusive of the regularity of the sale, but not of the power to sell ; and cites *Stryker* v. *Kelly* and *Doughty* v. *Hope;* (*supra,*) and *Jackson* v. *Morse,* (18 *John.* 442,) where it was held that if the tax had been paid, the sale was void. He adds, that to give the officer power to sell the land, it must have been assessed in due form by the town assessors, taxed by the county supervisors, and a certified transcript of the assessment must have been transmitted by the county treasurer to the comptroller, with the collector's affidavit that the tax was unpaid, &c. But he declines to give his opinion whether the deed is *prima facie* evidence of these facts. The cases of *Stryker* v. *Kelly* and *Varick* v. *Tallman,* I think are directly in point that it is not ; and I do not see how their authority can be disregarded by this court. If the deed is only evidence of the proceedings to sell, it proves none of the proceedings before the comptroller had anything to do with the business. Indeed, it is inconsistent, that a deed given by one public officer, should be conclusive evidence, or evidence at all, of the acts of other officers, over whom he had no control ; and some of whose acts, and which are of vital importance to the owners of the land, never come to his knowledge in any way. The language is not that the deed shall be evidence of the regularity of all of the proceedings provided for in the thirteenth chapter, but that the sale was regular according to its provisions.

Leggett v. Rogers.

The tax remains unpaid for two years after the returns are made to the comptroller, before it is required that he " shall proceed to advertise and sell such lands in the manner hereinafter provided." (1 *R. S.* 407, § 52.) After this lapse of time he commences proceedings to sell ; and the deed reaches back to this period, and from thence is evidence of regularity. Probably the grantee is compelled to go back no further than to the corrected rolls of the supervisors. They often make very material alterations in them, particularly respecting the non-resident lands ; and affix the tax to each parcel and make duplicates, one of which is delivered to, and kept by, the clerk of the town. There is no hardship in requiring the proceedings from this point to be shown, until the comptroller takes up the matter for the purpose of selling. The old rule required all this, and the statute has not changed it. If the statute means more than this, it makes the deed *conclusive* evidence of all the preliminary steps, which would be intolerable and unjust.

It follows, that the plaintiff can not recover without further proof.

This cause was tried before the recent statute upon this subject was passed. (*Laws of* 1850, *ch.* 183.) The effect of that act upon sales prior to its passage need not, therefore, be considered.

Usually, where a verdict is taken subject to the opinion of the court, the cause can be finally disposed of. But under the circumstances of this case, it is proper that it go back for a new trial ; and the costs must abide the event.

PAIGE, Pres. J., and WILLARD, J. concurred.

CADY, J. I was a member of the legislature when the act for the assessment and collection of taxes was passed, in 1813, and know how at least one member of the legislature understood the words " which conveyance shall vest in the person or persons to whom it shall be given, an absolute estate in fee simple, subject to all the claims which the people of this state shall have thereon ;" " and the conveyance shall be conclusive evidence that the

Leggett *v.* Rogers.

sale was regular according to the provisions of this act," in the 17th section, which are not to be found in the act of 1801 on the same subject.

I have occasionally, since the act of 1813, purchased land at the comptroller's sales for taxes. I have also purchased lands from persons who had no other title than the comptroller's deed on a sale for taxes—and I have sold such lands, believing that I had a perfect title. I have also known persons who had, or supposed they had, a title to wild and uncultivated lands, but who would have to trace their title through various deeds, wills or descents, suffer their lands to be sold for taxes, and purchase them, believing that the comptroller's deed would be prima facie evidence of title, and save them the trouble and expense of tracing their title back to the original grant. I have participated in that error, if error it was.

These, I admit, are circumstances which show that I do not come to the examination of this case free of all bias in favor of a title under a deed from the comptroller on a sale for the non-payment of taxes—yet the parties in this action may be entitled to my opinion, whether it be or be not entitled to any consideration.

The objection to the form of the conveyance made by the comptroller, is well answered by Chancellor Walworth in the case of the *Bank of Utica* v. *Mersereau,* (3 *Barb. Ch.* 576.)

The next objection was to the form of the notice given by the plaintiff to the occupant, because the sum mentioned therein was more then the plaintiff was entitled to. But the notice was enough to inform the occupant that his land had been sold, and that it was necessary for him to pay the tax, or his title would be defeated. The notice states that the consideration money was $8,04 mentioned in the conveyance, with the addition of $37\frac{1}{2}$ per cent on such amount—and the addition of 50 cents, the sum paid for the comptroller's deed, are in the aggregate $17,09. This was a mistake in the addition; and although the notice required the last sum to be paid into the treasury, for the benefit of the plaintiff, it could not have misled the occupant, as he must be presumed to know the law; that only the consideration and thirty-seven and a half per cent thereon, and the sum paid for

Leggett v. Rogers.

the comptroller's deed need be paid into the treasury. And, if he did not know that, he would, had he called at the treasurer's office to redeem, have been informed of the true sum due. I am of opinion that the judge rightfully overruled the objection made to the notice; especially as the defendant did not pretend to claim under the occupant.

The objections made by the defendant's counsel on his motion for a nonsuit, other than those already noticed, must be deemed the most important. If the court should hold that a purchaser at a sale for taxes can not show a title without calling witnesses to prove that the town, county and state officers, have each done the several acts required of them by the law, for the assessment and collection of taxes, it will be equal to a decree annulling all former sales for taxes, and prohibiting them in future. For who would purchase lands for unpaid taxes, if he can not, after the lapse of ten, twenty, thirty or forty years, prove his title without proving—otherwise than by a conveyance from the comptroller—that all the acts of town, county and state officers concerned in the assessment and collection of taxes have been performed in exact conformity to the statutes in relation to that subject.?

It will be well to have in one connected view, the leading acts required by chapter 13, part first of the revised statutes, to be done by the officers engaged in the assessment and collection of taxes.

The first acts are to be done by the assessors. They are to divide their respective towns and wards into proper assessment districts, and between the first days of May and July in each year ascertain all the taxable inhabitants, and all the real and personal estate liable to taxation in their respective towns and wards. They are to prepare assessment rolls in a prescribed form, and complete the same by the first day of September in *each year*, and leave a fair copy with one of their number, for the inspection of all persons interested; and give such notice as is thereafter mentioned. After they have met for the purpose of completing the assessment, and after hearing the objections, they must complete it and deliver it to the supervisor of the town, with such certificate as is directed in § 26 of the said chapter, on

Leggett *v.* Rogers.

or before the first day of October in *each* year. And the supervisor to whom it is delivered must deliver it to the board of supervisors at their next annual meeting. The board of supervisors in each county are to examine the assessment rolls of the several towns in their county, to ascertain whether the valuation in each town bears a just relation to the valuations in all the towns in the county, and they may increase or diminish the aggregate valuations of real estate in any town. And the board of supervisors may make such alterations in the description of the lands of non-residents as may be necessary to render such description conformable to the provisions of that chapter. If such alterations can not be made, they shall expunge the description of such lands from the assessment rolls; and they are to put down in proper order the sums to be paid for taxes. They must cause the corrected assessment roll of each town, or a copy thereof, to be delivered to the supervisor of each town; who is required to deliver the same to the town clerk of each town, to be kept by him.

They must deliver the corrected assessment roll of each town, or a copy thereof, to the collector of each town, on or before the 15th day of December in each year—to which shall be attached a warrant under the hands and seals of the supervisors, commanding such collector to collect from the several persons named in the assessment roll the several sums mentioned in the last column of such roll opposite their respective names—and the warrant must direct the collector what to do with the money when collected; and shall authorize him, in case any person named in the assessment roll shall refuse or neglect to pay his tax, to levy the same by distress and sale of the goods and chattels of such person, and require all payments therein specified to be made by such collector, on or before the first day of February then next ensuing.

As soon as the board of supervisors have sent or delivered the assessment roll and warrant annexed thereto to the collectors they must transmit to the treasurer of the county an account thereof, and the county treasurer, on receiving such account, is to charge each collector with the sums to be collected by him. Each collector is charged with the amount of the taxes on the lands of

non-residents, and he is authorized to receive such taxes; but he can not coerce the payment thereof, as they are not charged against any person by name.    As to such lands the proceedings, to assess and collect the taxes, are *in rem.*

Every collector, on receiving such tax list and warrant, must proceed to collect the taxes therein mentioned, and must call at least once, on the person taxed, or at the place of his usual residence, if in the town, and demand payment of the taxes charged to him on his property.    In case any person shall neglect or refuse to pay the tax, the collector must levy the same by distress and sale of the goods and chattels in his possession, *and no claim to be made thereto by any other person shall be available to prevent a sale.*

The legislature deemed it so important that the public taxes should be collected, that all goods found in the possession of the person taxed, whether they belong to him or not, are made liable to be taken and sold by a collector.

The collector is authorized to receive the tax on a part of any lot charged with taxes, provided the person paying such tax, shall furnish a particular specification of such part.    If any of the sums on the tax list remain unpaid, and the collector shall not be able to collect the same, he shall deliver to the county treasurer an account of the taxes remaining due, and make oath before the county treasurer, or in his absence before a justice of the peace, in substance, that the sums mentioned in such account remain due, and that he has not been able to collect them; and then the county treasurer shall credit the collector with the amount of such sums.

Whenever a county treasurer shall receive from a collector an account of unpaid taxes assessed on the lands of non-residents, he must compare the same with the original assessment roll, and if he finds it to be a true transcript thereof, he must add to it a certificate, showing that he has examined and compared the account with the assessment roll, and found the same to be correct; and after crediting the collector with the amount, he must, before the first day of April thereafter, transmit the account and collector's affidavit to the comptroller with such certificate as is above

mentioned.    And if such return of unpaid taxes on the lands of non-residents exceeds the amount of taxes due to the state, the comptroller must cause the surplus, after deducting any balance that may be due from such county on account of taxes previously rejected, to be paid out of the treasury of this state to the treasurer of such county ; *and the whole amount* of taxes so to be assumed by the state is to be collected for its benefit, in the manner therein provided.

If the legislature had not intended that full faith should be given by the comptroller to the return made by a county treasurer, they would not have directed payments to be made out of the treasury thereon.   Nothing is to be collected out of non-resident lands but money paid by the state, or taxes due to the state.

Whenever it is made to appear to the comptroller that any tax returned as unpaid, was paid before such return to the collector or county treasurer, he is authorized to cancel it on the books of his office.   If any tax charged on land shall remain unpaid until the first day of August following the year in which they shall have been assessed, they will be subject to a yearly interest at the rate of ten per cent until the same shall be paid to the treasury, or the land be sold.   It will be perceived that the comptroller has nothing in his office to guide his action but the return made by the collector, verified by his oath, and the certificate of the county treasurer made under his oath of office.   And whenever any tax charged on lands returned to the comptroller, and the interest thereon, shall remain unpaid for two years from the first day of May following the year in which the same was assessed, the comptroller *must* proceed to advertise and sell such lands in the manner directed by law.   The comptroller is required to give to the purchaser a certificate describing the lands purchased, the sum paid, and the time when the purchaser will be entitled to a deed.   If no person shall redeem the lands sold, within two years after the sale, the comptroller is directed, at the expiration of the said two years, to execute to the purchaser, his heirs or assigns, in the name of the people of this state, a conveyance of the real estate so sold, *which shall vest in the grantee an absolute estate, in fee simple,* &c.   Such convey-

ance must be executed by the comptroller under his hand and seal, and the execution thereof be witnessed by the deputy comptroller, surveyor general or treasurer, " and shall be conclusive evidence that the sale was regular according to the provisions of the said chapter."

These enactments must have been made for the purpose of securing a prompt payment of the public revenue, either by inducing the owners of lands to pay the taxes assessed thereon, or inducing persons to attend the comptroller's sales for taxes and bid for the lands offered for sale. Another object was to prevent too great a sacrifice of property. For the greater the certainty that the purchaser will acquire a good title, the less land he will take and pay the taxes. But who, for the last forty years, would have purchased lands for unpaid taxes, had he been told that he could not show a title unless he could prove, otherwise than by the comptroller's deed, that the town, county and state officers engaged in the assessment and collection of taxes had each done every act, and at the times required by law?

To call upon the purchaser to prove all the preliminary proceedings in the assessment and collection of taxes, before the account of unpaid taxes is made to the comptroller, would in ninety-nine cases out of a hundred defeat his claim. The men who were assessors ten, twenty, thirty or forty years ago, and who put up the notices required by sections 19 and 20, are not now to be found. Some are gone to Iowa, some to California, but most of them to their graves. So of the collectors, where are they? To send a person who purchased land at a comptroller's sale twenty, thirty or forty years ago, to seek for a collector of that time, with his tax list and warrant, would be about as idle as to tell him to go into the wilderness between the St. Lawrence and Mohawk rivers, and find the track of an indian made in the revolutionary war.

It may be said, that the purchaser ought, before he purchases, to secure the original assessment rolls and the evidence that they were completed before the first day of July in each year, and that such notices were put up by the assessors as are required by the 19th and 20th sections of the statute already referred to,

Leggett *v.* Rogers.

and preserve them as the "muniments upon which the validity of his title is to depend." But is that possible as to all the unoccupied lands in the state, and as to all purchasers?

At the last sale for taxes there were unoccupied lands offered for sale in probably one hundred towns—and say there were one hundred persons who intended to attend the sale and bid—how would each of them secure the original assessment roll in each of those towns, and the legal and competent evidence that the assessment roll was completed by the day, and the notices put up as required by law? The thing could not be done. As to the lands of non-residents, the assessors have nothing to do but ascertain and describe them in the assessment roll and ascertain and set down the value of each lot or tract, and put up notices that the assessment roll is completed and ready to be inspected; but neither the assessors nor any other person is bound to preserve the notices, or any evidence of the time or places where the notices were put up. Nor are they required to keep a copy of the assessment roll; but when they have completed it they must annex to it a certain certificate, and deliver it to the supervisor. And he is to deliver it to the board of supervisors, and they may increase or decrease the aggregate valuation, and alter the description of the lands of non-residents. And it is generally at least four years after the supervisors have completed the assessment roll and tax lists, before the comptroller advertises the land for sale. After which one of the hundred persons who intend to bid, undertakes to hunt up the muniments of his intended title to the lands in all parts of the state, which he intends to purchase; and off he goes to the town of Long Lake in the county of Hamilton. His business is to find who were the assessors in that town in the years 1842–43–44 and 45; and he is so successful as to find one-half of them; and he inquires for the original assessment rolls for those years, and is informed that they were delivered to the supervisor as the law required. He then inquires for the notices they put up according to the 19th and 20th sections, and they show him the places where the notices were put up; and he is informed that the notices were not preserved. He can get no muniment of title from them, nor can

Leggett v. Rogers.

he get any affidavit from them which can afterwards be used as evidence in any court. He next inquires for the town clerk, and finds him; but he has been town clerk but six months, and his predecessors are all dead, or gone to New Mexico, and delivered no assessment rolls to him. But suppose the intended purchaser is, against all probability, so successful as to find all the assessment rolls, and the town clerk, contrary to his duty, surrenders them to him; no one of the remaining ninety and nine who wish to purchase can possibly secure these muniments of title: and if deemed essentially necessary, but one person can safely bid for a single lot, and he knowing the advantage he has over all others, will conceal the documents, and keep them for his own exclusive benefit.

If the collection of taxes be necessary, and uncultivated lands must be sold for the payment of them, the public interest and the interest of those whose lands must be sold, demand that the law should be so construed as to secure the greatest competition at the sale; but surely it is not the way to encourage bidders to attend the sale, to assure them that there is not more than one chance out of one hundred, that they can secure a title for lands sold for taxes. Nor is it the way to encourage the owners of unoccupied lands to pay the taxes thereon, to tell them that if the comptroller does go through the form of a sale, there will be ninety-nine chances out of a hundred that they will keep their land and others pay the taxes.

What are the assessors required to do which can by possibility be useful to the owner of non-resident lands? They are required, as has already been said, to put up certain notices on or before the first of September in each year, in three public places in the town, setting forth that they have completed the assessment roll, and that a copy thereof is left with one of their number, designated in the notice, at some place to be specified therein, where the same may be seen and examined by any *of the inhabitants of the town* or ward during twenty days, and that the assessors will meet on a certain day at the expiration of such twenty days, and at a place to be specified in such notice, to review their as-

Leggett *v.* Rogers.

sessments, on the application of any person conceiving himself aggrieved.

These notices are intended for the *inhabitants of the town* in which they are put up. The inhabitants of the town would probably see them; but the owners of unoccupied lands in the town, who do not reside therein, would not probably see the notices. But such persons, if they knew the law, would know that notices were up; and if they wished to examine the assessment roll, would learn who were the assessors, and go directly to one of them and learn where the assessment roll was to be found. The only objection he could make would be by an affidavit that his property was valued too high—that it did not exceed a certain sum to be specified in the affidavit. A person residing in New-York and owning unoccupied lands in the town of Lake Pleasant in the county of Hamilton, and wishing to swear down the value of his lands, would never be prevented from doing so because he could not find such notices as are above mentioned. No one is under the least obligation to preserve such notices; and the probability is that not one of the many hundreds that were put up last year can now be found.

What is the assessment roll as to the lands of non-residents, which the assessors are bound to make out? All they have to do, as to such lands, is to describe them and put a value on them. They do not intimate what the tax on them shall or ought to be; and when that assessment roll is before the board of supervisors, they can alter the description of the lands, and increase or decrease the aggregate valuation. When it was in the hands of the assessors, it was of no force against any one; and when the assessment roll, tax list and warrant are put by the board of supervisors into the hands of the collector, it is of no other force, as to the lands of non-residents, than that it authorizes the collector to receive the taxes if any person is willing to pay them. But when the copy of such tax list is returned to the comptroller's office, with the oath of the collector and certificate of the county treasurer, and the comptroller has examined and corrected it, if imperfect, it becomes matter of record: it becomes a warrant to the comptroller to cause large sums to be paid out of the

treasury of the state, and to sell the lands mentioned therein unless the taxes be paid in à specified time. But if the original assessment roll made by the assessors, and the notices which they put up—and if the original assessment roll and tax list made out by the board of supervisors and their warrant to the collector, were produced to the comptroller, that would not authorize him to advance a cent on them; nor would all those papers authorize the comptroller to sell an inch of land. But on the return made by the collector to the county treasurer, with the affidavit of the collector and the county treasurer's certificate, the comptroller may pay thousands and tens of thousands of dollars, and sell all the lands on which the taxes are not paid. I am persuaded that if a conveyance from the comptroller be not, as I insist that is, in all cases prima facie evidence of title in the grantee, yet in this case the plaintiff gave sufficient evidence of title to entitle him to judgment.

The act for the assessment and collection of taxes, passed in 1801, contained no enactment declaring what estate should by the comptroller's conveyance vest in the grantee, or of what the conveyance should be evidence; but when that act was revised in 1813, those enactments were introduced into the 17th section of the act for the assessment and collection of taxes of that year; and it is not to be presumed that they were incorporated into that act by accident; but the legislature intended that they should have some effect. But they are unmeaning words, if the grantee to show his title must, independent of the conveyance, give evidence that all the town, county and state officers concerned in the assessment of taxes have performed all the acts which it was their duty to perform.

The supreme court, in January term, 1821, in the case of *Jackson* v. *Moore*, (18 *John.* 441,) gave a construction to the act of 1813. In that case the plaintiff as the evidence of his title gave the comptroller's deed in evidence, and at that day neither the court nor the counsel supposed that any thing more was necessary, to show title to the land described in the deed. But the question was, whether the defendant, in order to defeat the apparent title of the plaintiff, should be allowed to prove that

the taxes for the non-payment of which the comptroller had sold the land, had been paid to the collector. Chief Justice Spencer tried the cause, and held that as the taxes had been paid, the comptroller had no authority to sell. This was upon the same principle, that if there be a regular judgment against a person who owns a piece of land, and an execution is issued on that judgment, and the land sold and a deed given by the sheriff, the purchaser has apparently a perfect title; but the owner of the land may show that the judgment had, before the sale, been paid, and thus its lien destroyed and the sale under it void.

By the 10th section of the act of 1813 it is enacted "that all taxes upon any real estate shall be a lien thereon, and shall be preferred in payment to all other charges;" but if the tax be paid the lien ceases. In the case of *Jackson* v. *Moore* the court said "the sale was made in consequence of a return that the whole of lot No. 6 was chargeable with the tax. This was a mistake of the assessors; for that part of the lot, including the premises, had been assessed separately and the taxes paid."

The comptroller was justified in selling, for he must be governed by the return before him; the conveyance will be conclusive evidence that the sale was regular. The statute declares that the conveyance shall vest an absolute estate in fee simple in the purchaser, which it does, if the tax has not been paid; but if it has been paid, then no estate passes by the sale, for the statute intended to divest the title of the former owner, for the non-payment of the tax and *for that only*, and it must be so construed. The title acquired by the purchaser is contingent, so far as it may be affected by establishing the fact that the tax had been paid before the sale was made.

"The right to sell is founded upon the fact of non-payment; the returns made to the comptroller are not conclusive evidence of the fact, but only *prima facie*, and such as will justify him, as an officer, in the discharge of his duty. The validity of the sale and conveyance are necessarily to depend upon the contingency of non-payment; when this is drawn in question it is competent to prove payment, and by so doing no rule of law is violated." "Great regard ought, in construing a statute, to be

paid to the construction which the sages of the law who lived about the time or soon after it was made, put upon it; because they were best able to judge of the intention of the makers." (2 *Inst.* 11, 136, 181.)

This rule is applicable to the judgment in the case of *Jackson* v. *Moore.* The judge who delivered the opinion of the court was one of the revisers of the law of 1813; and his associates then on the bench of the supreme court, were as distinguished sages of the law, as any who have adorned that court. I regard that opinion as deciding that a conveyance from the comptroller is at least prima facie evidence of a perfect title in the grantee, and of the regularity of the sale. When the statutes were revised in 1830, the enactment in the 17th section of the act of 1813, that the conveyance made by the comptroller " shall vest in the person or persons to whom it shall be given, an absolute estate in fee simple, subject" &c. was incorporated into the 80th section of chapter 13 of the first part of the revised statutes, and the case of *Jackson* v. *Moore,* (18 *John.* 441,) referred to as showing its construction. This was, as I understand, a legislative adoption of the construction given to the enactment in that case. Had the legislature intended that the construction given to the enactment by the supreme court should not prevail, the enactment would have been altered so as to preclude that construction.

The case of *Jackson* v. *Esty,* (7 *Wend.* 148,) was an ejectment for lands sold for taxes, and the comptroller's deed was given in evidence. The defendant's counsel, instead of calling on the plaintiff to prove that the assessors, supervisors, collector and comptroller had done the acts which their duty required them to do, proved that the land conveyed was occupied at the time the conveyance was given by the comptroller. The plaintiff obtained a verdict, but the supreme court granted a new trial, on the ground that the plaintiff had not given to the occupant the notice required by the act of 1819. In that case the court said, " It is a general rule that the party who sets up a title must furnish the evidence necessary to support it. If the validity of a deed depends on an act *in pais,* the party claiming under it

is as much bound to prove the performance of the act as he is bound to prove any matter of record on which its validity might depend. It forms a part of his title."

" Perhaps a deed from a comptroller is an exception in this particular; for the statute declares that such conveyance shall be conclusive evidence that the sale was regular according to the provisions of the act; but it can not be evidence of acts done subsequently." This shows that the supreme court supposed that the above enactment was to have some effect. There was no evidence given or called for in that case, of the preliminary proceedings previous to the sale.

In the case of *Comstock* v. *Beardsley*, (15 *Wend.* 349,) the plaintiff had not given an occupant notice, and the supreme court held he was not entitled to recover; but in that case neither the court or counsel intimated that the plaintiff need give any evidence of any acts previous to the execution of the deed from the comptroller.

In the case of *Bush* v. *Davison*, (16 *Wend.* 550,) the plaintiff failed to recover, because he had not given notice to the occupant, who was in possession when the comptroller gave the deed under which the plaintiff claimed.

The case of *Varick* v. *Tallman*, (2 *Barb. Sup. Court Rep.* 113,) is the first case which I have been able to discover in which the plaintiff in an action of ejectment, claiming under a conveyance from the comptroller for lands sold for taxes, has ever been called on to prove any of the preliminary steps taken for the assessment and collection of taxes before the execution of the deed. The production of such deed, with evidence that the defendant was in possession of the land described in the deed, has uniformly been regarded by courts and counsel and parties, from 1813 to 1848, as enough to put the defendant on his defense. And in the case of *The Bank of Utica* v. *Mersereau*, (3 *Barb. Ch. Rep.* 578,) the chancellor, when speaking of a conveyance made by the comptroller, of lands sold for taxes, said: "The deed in question, therefore, if the lands assessed, and the part conveyed, had been so described therein as to be capable of location, would have been sufficient, *prima facie,*

under the practical construction which has been given to the tax laws, to entitle the Steuben County Bank to the 800 acres of the premises in controversy, which are claimed under that deed. This prima facie evidence of ownership, however, was liable to be rebutted, by showing that the tax returned to the comptroller as unpaid, had actually been paid to the collector. (*Jackson* v. *Moore*, 18 *John. Rep.* 441.) It might also be rebutted by showing that the land thus sold and conveyed by the comptroller, or some part of it, was actually occupied by some person at the expiration of two years from the time of the sale, or that it was so occupied at the time of giving the comptroller's deed; so as to throw upon the party claiming under such deed the necessity of proving that he had given to the occupant the notice to redeem which is required by the statute on this subject." And the learned judge before whom the case of *Varick* v. *Tallman* was tried, decided as all judges had for 35 years before decided, that the comptroller's deed was prima facie evidence of title. And as I understand the cases to which he referred in giving the opinion of the supreme court, in granting a new trial, they do not demonstrate that he erred on the trial. The first case referred to is that of *Sharpe* v. *Spier*, (4 *Hill*, 86,) and a part of the opinion of Justice Bronson is quoted, to prove that a party claiming title to land under a conveyance made by the comptroller for land sold for the non-payment of taxes, must prove by other evidence than such conveyance, that all the officers engaged in the assessment and collection of taxes have done their duty. But the questions raised, discussed and decided in the case of *Sharpe and others* v. *Spier*, were, as I understand them, very different from the questions in this cause. In that case, the plaintiffs, at the trial, gave evidence of a title to the premises in question, which was prima facie perfect. "The defendant set up a title under an assessment and sale for making a well and pump in Willow-street." He gave evidence of various acts, with a view of proving that the premises in question had been regularly sold by virtue of the charter of the village of Brooklyn. The judge before whom the cause was tried decided that the plaintiffs were entitled to recover. The defendant

Leggett v. Rogers.

excepted, and on a bill of exceptions moved for a new trial, which was denied. Bronson, justice, delivered the opinion of the court, and decided, that no man's land could be sold, by force of the charter of that village, for a "well and pump assessment;" and it was not essentially necessary that any other question should have been decided in that case; but as other questions had been discussed, and on which the parties wished for the opinion of the court, the court decided that if it were to concede that under the charter, lands might be sold for "a well and pump assessment," the sale in that case was void; because various acts necessary to give effect to the sale, were not proved to have been performed according to the charter. In that part of the opinion principles are stated, which in the case of *Varick* v. *Tallman*, seem to have been supposed applicable to that case.

In the opinion of the court in the case of *Sharpe* v. *Spier*, it was well said that "every statute authority in derogation of the common law, to divest the title of one and transfer it to another, must be strictly pursued, or the title will not pass. This is a mere naked power in the corporation, and its due execution is not to be made out by intendment; it must be proved. *It is not a case for presuming that public officers have done their duty*, but what they have in fact done must be shown. The recitals in the conveyance are not evidence against the owners of the property; but the facts recited must be established by proofs *aliunde*. *As the statute has not made the conveyance prima facie evidence of the regularity of the proceedings*, the fact that they were regular must be proved, and the onus rests on the purchaser. He must show, step by step, that every thing has been done which the statute makes essential to the due execution of the power. It matters not that it may be difficult for the purchaser to comply with such a rule. It is his business to collect and preserve all the facts and muniments upon which the validity of his title depends." These remarks of the learned judge who gave the opinion of the court, were very appropriate to the case then under consideration; and great violence must be done to them, before they can be made to support the proposition, that the plaintiff in the case under consid-

Leggett *v.* Rogers.

eration, can not show a title under the conveyance from the comptroller, unless he proves by other evidence than the conveyance, that the town, county and state officers have each and every of them done every act required of them respectively in the assessment and collection of taxes. I will for the present notice but one remark, in that part of the opinion quoted, which is this : *" As the statute has not made the conveyance prima facie evidence of the regularity of the proceedings, the fact that they were regular must be proved, and the onus rests on the purchaser."* This remark of the learned judge shows, if I understand it, that if the statute had made the conveyance prima facie evidence of the *regularity* of the proceedings, then the fact that they were *regular* need not have been otherwise proved. But it has already been shown, that the statute for the assessment and collection of taxes makes the comptroller's *"* conveyance conclusive evidence that the sale was regular according to the provisions of that chapter." And Chief Justice Marshall, in the case of *Williams* v. *Payton*, (4 *Wheat.* 77,) said : " In the act of congress there is no declaration that the conveyances shall be deemed *prima facie evidence of· the validity* of the sale." This proves that if the act of congress had contained such a declaration, the chief justice would have deemed it sufficient without further proof, unless impeached. These two cases did not forbid a judgment for the plaintiff in the case of *Varick* v. *Tallman*, but were, as I understand them, in his favor ; as the statute under which he claimed did contain an enactment in substance like the one, the want of which in the cases of *Sharpe* v. *Spier* and *Williams* v. *Peyton*, was urged against the parties claiming under the conveyance from the marshal, in the one case, and in the other from the corporation of Brooklyn.

The cases of *Jackson* v. *Shepherd*, (7 *Cowen.* 88,) *Runkendorf* v. *Taylor's Lessee*, (4 *Peters*, 357,) and *Stroud's Executors* v. *Crouse*, (4 *Cranch*, 403,) were cases in which the validity of a sale for taxes came in question, but no statute under which any of the sales took place, contained any enactment declaring what estate should vest in the purchaser, or of what the convey- ance given on the sale should be evidence.

Leggett v. Rogers.

The opinion of the court for the correction of errors, in the case of *Stryker* v. *Kelly*, (2 *Denio*, 323,) is the one on which the supreme court, in the case of *Varick* v. *Tallman*, mostly relied. The court for the correction of errors, for the purpose that all might thereafter know what was decided in that case, adopted a resolution as follows: "Resolved, that the making of an affidavit by the collector, as required by the act of the 12th April, 1816, for the more effectual collection of taxes and assessments in the city of New-York, is an essential part of the power to sell for assessments or taxes under the provisions of that act; and that the lease given by the corporation is not evidence that such an affidavit has been made, so as to support the sale, without proof of the making of such affidavit before the premises were advertised for sale." It can not be denied, that the construction here given by the court for the correction of errors to the words, "and such lease shall be conclusive evidence that the sale was regular according to this act; and such purchaser or purchasers, his, her or their executors, administrators and assigns, shall by virtue thereof, and of this act, lawfully hold and enjoy the said lands and tenements in the said lease mentioned, for his, her or their own proper use, against the owner or owners thereof, and all claiming under him or them, until such purchaser's term therein shall be fully complete and ended," furnished the supreme court with a strong argument for denying the plaintiff's right to recover, in the case of *Varick* v. *Tallman*; but with unfeigned respect for the learned judge who delivered the opinion of the court in that case, I have much confidence that there is such a difference between the "act for the more effectual collection of taxes and assessments in the city of New-York," and chapter 13, part 1, of the revised statutes, as might have warranted a judgment in favor of the plaintiff in the case of *Varick* v. *Tallman*, and for the defendant in the case of *Stryker* v. *Kelly*. The former granted certain powers to the corporation of the city of New-York, to be exercised on specified conditions; it imposed no *duties* on the members of the corporation. The latter contained a system of taxation for the support of government, and imposed certain duties upon public

Leggett *v.* Rogers.

officers which they were bound to perform under their official oaths—and every individual in the state is interested that the property of every other person should be taxed, so as to bear a fair proportion of the public burthens; and the public interest demands that the laws for the collection of taxes should be such as to secure a collection of them, with as small a sacrifice of individual property as may be. The former may be regarded as a private statute, as it contains no clause declaring it to be a public one, and it relates to a single city. The latter is a public statute, made for the public good, and to be construed liberally. A knowledge of the former law does not enable a person to know, that an assessment has been made and charged on his land. The corporation and all its officers may have done their duty, and no such assessment have been made; but every person who owns uncultivated lands knows, that if the public officers do their duty, his land will be taxed every year. He knows also, that unless the tax be paid his lands will be sold. He knows also, that if he pays the tax his lands will not be sold; or if sold, the sale will be vacated, on an application to the comptroller. In the former act the legislature granted certain powers to the corporation, and prescribed the *conditions* on which the power might be executed; but the laws for the assessment and collection of taxes are addressed to the town, county and state officers, commanding them to do certain acts. By the former, whenever the collector shall make a certain affidavit, then and in such case *it shall and may be lawful* for the mayor and aldermen and commonalty to take order for advertising, &c. The latter enacts that "*whenever any tax charged on lands returned to the comptroller's office,* and the interest thereon, shall remain unpaid for two years from the first day of May following the year in which the same was assessed, the comptroller *shall* proceed to advertise and sell such lands in the manner hereinafter provided."

And the court for the correction of errors resolved, in the case of *Stryker* v. *Kelly*, that the affidavit of the collector was an essential part of the power of the corporation to sell for assessments or taxes. The affidavit must have been delivered to the corporation, or they could not act on it; and being in their pos-

session, if ever made, there was no hardship in holding that they or the person claiming under them ought to produce it.

And the supreme court, in the case of *Jackson* v. *Moore*, decided that the right or authority to sell is founded on the non-payment of the tax, and that the returns made to the comptroller are not *conclusive* evidence of that fact; but the man whose land is taxed must know whether the tax has been paid, and there is no injustice in requiring him to prove the payment. And hence it is that the return made to the comptroller's office is prima facie evidence that the land has been taxed, and that the tax remains unpaid.

What is the collector's authority for collecting a tax by a distress and sale of the goods of the person taxed? The assessment roll, tax list, and warrant delivered to him by the supervisors. He is not to delay the collection of the taxes, to ascertain whether the assessors made out an assessment roll and gave the notices required by law. His authority to sell a horse or a cow does not depend upon the inquiry whether the assessors have done their whole duty. Suppose the collector sells a horse or sheep for the satisfaction of a tax; would the purchaser have to give any other evidence of the authority of the collector to sell, than the assessment roll and warrant in the hands of the collector?

When can it be said that the comptroller has authority to sell land for the non-payment of taxes, and what is the evidence of that authority?

The legislature has directed the county treasurer to make certain returns to the comptroller, of unpaid taxes; and if the comptroller find it correct in point of form, he is bound to give it full credit and act upon it, without stopping to inquire whether the assessors made out the assessment roll within the time, and gave the notices required by law; and if the tax remains unpaid as above stated, he is commanded by law to proceed to advertise and sell the lands. To show his authority nothing more can be necessary than such return and the law which makes it his duty to sell. And the comptroller is an officer whose official acts will be presumed to be well done, until the contrary is shown. It would be competent for the legislature to pass a law imposing a

Leggett *v.* Rogers.

tax of six cents an acre on all the uncultivated lands in the state, and directing the comptroller, if the tax be not paid by the first day of January, 1852, to sell the land at auction, in parcels and by proper descriptions, on the first day of February thereafter at the capitol in the city of Albany, and give conveyances to the purchasers which should vest in them an absolute estate in fee simple. The purchaser would have nothing to do but show the conveyance, and the law, in order to show his title.

The surveyor general has often been authorized to sell land on giving certain notices, but no purchaser was ever called on to show any other evidence of title, than the deed of the surveyor general. He was presumed to have acted according to law; and that presumption is no more applicable to the surveyor general than to the comptroller. It may be said that the land conveyed by the surveyor general belonged to the state; but the legislature have as perfect a right to order lands to be sold for the payment of a public tax, as lands which belong to the state; and in both cases the law presumes that the officer does his duty.

In the case of *Hartwell* v. *Root*, (19 *John.* 345,) the court said, " the general rule is, that when a person is required to do a certain act, the omission of which would make him guilty of a culpable neglect of duty, it ought to be intended that he has performed it, unless the contrary be shown." (3 *East*, 192. 10 *Id.* 216.) Unless the assessors were " guilty of a culpable neglect of duty," the land in question was put into the assessment roll; and unless the supervisors neglected their duty, a tax was imposed upon the land, and put into the tax list, and the warrant delivered to the collector. And unless the tax was paid, the collector neglected his duty, unless he made a return of the unpaid taxes to the county treasurer. And he neglected his duty, unless he made a return to the comptroller, who was bound to put full faith in such return and sell unless the tax was paid. " A statute ught on the whole to be so construed, that if it can be prevented, no clause, sentence or word shall be superfluous, void or insignificant." (4 *Bac. Abr. tit. Statute, letter I. pl.* 9.)

If a purchaser of land sold for the non-payment of taxes must, otherwise than by a conveyance from the comptroller, prove that

the town, county and state officers have each performed the duty assigned to them, what effect is given to this clause in the 80th section—" which [conveyance] shall vest in the grantee an absolute estate in fee simple" ?

These words were probably introduced to assure the grantee that his estate should be an absolute estate in fee simple. Although the former owner had only a conditional or incumbered estate, the grantee was to have an estate free of all conditions, limitations or incumbrances, excepting only " the claims which the people of the state may have thereon."

The case of *Tallman* v. *White* in the court of appeals, (2 *Comst.* 66,) turned upon the question whether the land sold had been properly described; and Justice Ruggles, in giving the opinion of the court in that case, said, " it is unnecessary here to determine whether the comptroller's deed is prima facie evidence of the facts upon which his power to sell depends.". That question is still an open one in that court.

If the grantee, in order to show his title, must, otherwise than by the conveyance from the comptroller, prove that every act required by law, in the assessment and collection of taxes, has been performed, the words in the 81st section, " and shall be conclusive evidence that the sale was regular according to the provisions of this chapter," have very little meaning or force.

What do courts mean, when they say that a proceeding in court has been regularly done ? Do the courts so say of anything done without authority ? I have supposed that whenever in legal proceedings it could be said that an act was regularly done, it was done by authority; and that one of the most gross irregularities, was the doing an act without authority. Courts have sometimes used the word " regularity" for the purpose of showing that an act had been or ought to be done as the law required; and when applied to a statute sale of land it means something more than that the auctioneer in due form cried, " Who bids higher ? going, going, going—gone."

In the case of *Runkendorf* v. *Taylor's Lessee*, there was no question but that the collector, on the day of sale, made it in due form. In that case Justice McLean, in delivering the opin-

ion of the court, said: "No presumption can be raised in behalf of a collector who sells real estate for taxes, to cover any radical defect in his proceedings; and the proof of the *regularity* in the procedure devolves upon the person who claims under the collector's sale." It is difficult to understand what that learned judge meant by the word "regularity," unless he supposed that the party claiming under the collector's sale, would show a good title if he proved that every act required by law, leading to the sale, had been regularly done. In that case the judge before whom the cause was tried ruled that the party claiming under a sale for taxes was bound to produce the original assessment roll; but the supreme court of the United States decided otherwise, and held that the *book* made by the register from the assessment lists on file in his office was evidence, and the only evidence.

The remark of the same learned judge in the case of *Beaty* v. *Knowles*, (4 *Peters*, 152,) that "the power to impose a tax on real estate, and to sell it when there is a failure to pay the tax, is a high prerogative, and should never be exercised when the *right is doubtful*," was applied to the power of a corporation, and can have no application to a sovereign state. There can be no *doubt* as to the power of the state "to impose a tax on real estate and sell it when there is a failure to pay the tax.'

A judgment may be given for the plaintiff in this case without directly overruling the judgment given in the case of *Varick* v. *Tallman*. In that case the defendant showed a perfect title, unless it had been defeated by the comptroller's sale and conveyance. In this case the defendant showed no title. For aught that appeared to the contrary he was a mere intruder, after the plaintiff's title had become perfect under the 83d section.

The case of *Knox and another* v. *David Jenks*, (7 *Mass. R.* 488,) shows that a stranger to the title has not the same right to insist on the proof of all the preliminary steps to a sale, that a person having title at the time of the sale, has.

In the case of *Williams* v. *Payton*, the plaintiff had a perfect title unless it had been defeated by the collector's sale. So in the case of *Sharpe and others* v. *Spier*, the plaintiffs had the title unless it had been taken from them by a corporation sale.

Leggett *v.* Rogers.

In the case of *Stryker* v. *Kelly*, the plaintiffs had a right to recover unless defeated by a corporation sale.

There are also sections of the revised statutes in relation to the assessment and collection of taxes, which have not yet been particularly noticed, and which are applicable to this case, and were not to the case of *Varick* v. *Tallman*, although they certainly tend to establish the construction insisted on for the words in the 81st section, " *And shall be conclusive evidence that the sale was regular, according to the provisions of this chapter.*"

In the case of *Varick* v. *Tallman*, it was not shown that there was any person in possession of the land when the conveyance was given by the comptroller; and consequently the 83d and 87th sections had no direct application to that case. In this case it was proved that the premises in question were occupied when the conveyance was given by the comptroller to the plaintiff.

What is enacted by section 83 ? " Whenever any land sold for taxes by the comptroller, and conveyed as hereinbefore provided, shall, at the time of the conveyance, be in the actual occupancy of any person, the grantee to whom the same shall be conveyed, or person claiming under him, shall serve a written notice on the person occupying such land, stating in substance, the sale and conveyance, the person to whom made, and the amount of consideration money mentioned in the conveyance, with the addition of thirty-seven and an half per cent on such amount, and the further addition of the sum paid for the comptroller's deed; and stating also that unless such consideration money and the said thirty-seven and an half per cent, together with the sum paid for the comptroller's deed, shall be paid into the treasury for the benefit of such grantee, within six months after the service of such notice, that the conveyance of the comptroller will become absolute, and the occupant and all others interested in the land, be forever barred from all right or title thereto."

Did the legislature intend that the grantee should put a falsehood into the notice, or did they intend that the consequences specified in the notice should follow the non-payment of the tax, interest, and costs, to wit, that " *the conveyance of the comptroller should become absolute, and the occupant and all others inter-*

Leggett *v.* Rogers.

*ested in the land be forever barred from all right or title thereto"*? No one is allowed to suppose that the legislature intended that the notice should contain an impotent threat—which would not be executed—but that the consequence specified in the notice would follow.

The 87th section is as follows : " In every case of actual occupancy, the grantee, or the person claiming under him, in order to complete his title to the land conveyed, shall file with the comptroller the affidavit of some person, who shall be certified as credible, by the officer before whom such affidavit shall be taken, that such notice as is above required, was duly served, specifying the mode of service." What is meant in this section, by the words " *in order to complete his title to the lands conveyed*" ? Did not the legislature mean that if the grantee did the thing required of him it should complete his title ? And if a man has a *complete title*, has he not a title which all courts must recognize ?

The 88th section is as follows : " If the comptroller shall be satisfied by such affidavit, that the notice has been duly served, and if the moneys required to be paid for the redemption of such land, shall not have been paid into the treasury, he shall certify the fact, and the conveyance before made by him shall thereupon become absolute ; *and the occupant and all others interested in the said lands shall be forever barred of all right and title thereto.*" If " the conveyance before made by him [the comptroller] shall thereupon become absolute, and the occupant and all others interested in the said lands shall be forever barred of all right and title thereto," it would seem to follow, that the ruling of the justice at the circuit was what the law required. But did the legislature intend that a grantee named in a conveyance from the comptroller should, if the land was occupied, and he should do as required by the 83d and 87th sections, acquire a more perfect title, than he would have if the land conveyed was not occupied ? Section 82 is as follows : " It shall be the duty of the comptroller to bid in for the state, at any sale of lands for taxes, every lot of land by him put up, for which no person shall offer to bid ; and certificates of such sale shall be made by the comptroller, which shall describe the lands purchased, and spe-

Leggett *v.* Rogers.

cify the time when the people of this state shall be entitled to a deed. Such purchases shall be subject to the same right of redemption as purchases by individuals, and if the lands sold shall not be redeemed, the comptroller shall execute a release therefor, to the people of this state, which shall have the same effect, and become absolute in the same time, and on the performance of the like conditions, as in the case of conveyance to individuals." Did the legislature intend that the people of the state should acquire a perfect title under this section? or did they intend that the land and all the arrears of taxes due thereon for moneys paid by the state to county treasurers should be lost, unless the notices put up by assessors, twenty, thirty or forty years since, should be found and produced in court, or the fact that they were put up and their loss accounted for, and their contents proved? Such gross improvidence ought not to be imputed to the legistature.

In construing any part of chapter 13 of the first part of the revised statutes, the whole ought to be taken into consideration, and such construction given to each part as will make the various parts harmonize with each other, and lead to a prompt payment of the taxes. What is the meaning, in the above section, of the words "which shall have the same effect and become *absolute in the same time,*" &c.? Do they not import that the releases to the state and conveyances to individuals do in some cases become absolute in a specified time?

" If the meaning of a statute be doubtful, the consequences are to be considered in the construction." (4 *Bac. Abr. tit. Statute, I. pl.* 94.)

It is well known that there are large tracts of uncultivated lands between the St. Lawrence and Mohawk rivers, and which will probably remain uncultivated for many years to come. These lands, except such of them as belong to the people of the state, have been taxed for more than fifty years, and much of them have been sold for taxes ; and some of them have, in obedience to section 82, been bid in by the comptroller. If any one will examine the account of sales for the year 1845, recently published by the comptroller, it will be found that at that sale more

Leggett *v.* Rogers.

than 96,000 acres, in the county of Hamilton, were bid in by the comptroller, and released by him to the state in pursuance of the 82d section. That more than $4000 were due on those lands for taxes, interest, and costs. A great proportion of that sum has been paid out of the treasury of the state to the county of Hamilton, in pursuance of the 31st section. The lands thus purchased by the state are no longer taxable, and the taxes heretofore assessed are cancelled by the purchase: and what is to be the consequence if the people of the state can not hereafter show a title under the release from the comptroller, unless they can prove that the assessors, supervisors, collectors, and the comptroller have each performed every act which chapter 13 required of them? The former owners will remain quiet, until those lands become saleable, and then take possession and put the people of the state at defiance. And should the attorney general be weak enough to bring an action of ejectment, some ten or twenty years hereafter, and be called upon to prove that the assessors did complete their assessment roll by the first day of September, and did put up the notices as required by the 19th and 20th sections, and that the assessment roll was delivered to the supervisor, and that he delivered it to the board of supervisors, and that they corrected it, and added the tax, and delivered the same to the collector with a warrant for collecting the taxes as directed by article 3d and title 2d of the said chapter, and that the collector performed all his duties according to article 1st of title 3d of said chapter—the people would be nonsuited in ninety-nine cases out of one hundred.

It is difficult to believe that the legislature intended that there should be so much difficulty and uncertainty, as to the title of land sold by the comptroller for the non-payment of taxes. If they did, they contrived a most effectual mode of exhausting the treasury, and exempting uncultivated lands from effectual taxation.

There are parts of chapter 13 which show that the legislature did not intend that purchasers at the comptroller's sales for unpaid taxes should be defrauded. By sections 89 and 90, if it be discovered, either before or after the conveyance is given, that the sale, for *any cause,* is invalid, the comptroller is authorized

to refund the purchase money and interest. There is no limitation as to the time within which application may be made to the comptroller to repay the purchase money and interest.

Would it be enough to warrant the comptroller in repaying the purchase money and interest, if the purchaser shall prove by the affidavit of his agent that diligent search has been made for the original assessment roll and none can be found, and that no evidence whatever can be discovered showing that the assessors ever put up the notices necessary by the 19th and 20th sections ? If that evidence would be enough, the state will want some other revenue than that arising from the canal, to meet all the calls. on the treasury. And certainly if the legal presumption be, that the town and county officers have not done their duty, very slight evidence in aid of that presumption, ought to be enough to justify the comptroller in repaying the purchase money and interest. But should an application for repayment be made to him, he would point to the return made by the county treasurer, and say, " that is prima facie evidence that the tax was assessed and is unpaid ; you must prove that that return is false or founded in mistake, or I can not listen to your application." And if that answer on the part of the comptroller would be correct, the plaintiff in this cause is entitled to judgment.

New trial granted.

