THE PEOPLE, *ex rel.* BARNES, *v.* GARDNER.

The canal board, upon reversing or modifying an award of the canal
appraisers, must state the grounds of reversal or modification in their
resolution.    The statute (ch. 752 of 1849, § 4) is imperative, not merely
directory.

The offering by one of the canal commissioners, at a meeting of the canal
board, of a resolution, in writing, that an appeal be reheard, is an appli-
cation in writing for such rehearing.

APPEAL from an order of the Supreme Court, awarding a
peremptory mandamus.    In September, 1849, the canal apprai-
sers made an award to the relator for $8043.35 for damages from
the appropriation of his land and waters.    Appeals were taken
on behalf of the canal commissioners, representing the State,
and also by the relator.    On the 29th December, 1859, the
canal board adopted a resolution adding $4,010 to the award.
The resolution simply directed this increase, without recital or
statements of any facts or grounds for thus modifying the
award.    At the time of its passage, the appeal was not on the
business calendar of cases to be heard, nor had notice been
given of any special meeting for the hearing of calendar cases,
as required by the regulations of the board.    Mr. Gardner,
the commissioner in charge of the section of the canals on
which the damages were incurred, was absent from the meet-
ing.    On the 3d day of January, 1860, Mr. Gardner, at a
meeting of the canal board, presented a resolution in writing,
reciting the foregoing facts, vacating the resolution of Decem-
ber 29, ordering a rehearing of the appeal, and directing a
copy of the resolution to be served on the relator.    This reso-
lution was laid upon the table, but, subsequently, on the 10th
February, 1860, was taken up and passed.    The relator, regard-
ing this last resolution as nugatory, applied to Mr. Gardner to
draw his draft on the auditor for the canal department for the
award, as increased by the resolution of December 29, 1859.
Upon his refusal the relator obtained a mandamus, which was

made peremptory upon the hearing at special term; and the order having been affirmed at general term in the third district, the defendant appealed to this court.

*John H. Reynolds*, for the appellant.

*Henry Smith*, for the respondent.

SMITH, J. The canal board is clothed with certain judicial powers. It is authorized, upon appeal, to review the decisions of the canal appraisers, and reverse or affirm, or modify their appraisements. (1 R. S., 5th ed., p. 597, § 106; Laws of 1829, ch. 368, § 3.) The board is composed of administrative officers, and is entitled to exercise no judicial functions except those specially and distinctly conferred by some legislative act. The rules of law applicable to inferior magistrates or courts of special and limited jurisdiction apply to it. These rules are, that nothing shall be intended to be within their jurisdiction; and that the authority for all their acts must appear upon the face of their proceedings, or must be affirmatively and distinctly shown. The papers presented to the court below, and upon which the motion for a mandamus was made and granted, do not show upon their face that the canal board ever acquired jurisdiction to pass the resolution increasing the amount of the relator's award from $8,043.35 to $12,053.35. The resolution itself proves nothing. The affidavit of the relator shows the making of an award by the canal appraisers, and the appeals therefrom by himself and the canal commissioners, but does not show that any return was ever made to such appeal by the canal appraisers. Until the making of such return, the canal board had no jurisdiction upon the appeal. The affidavit of the respondent shows that, at the time of the passing of said resolution, the said appeal was not on the business calendar of cases to be heard before the said board, and no notice of any special meeting of the board for the hearing of the calendar cases, as required by its regulations, had been given. Whether cases are immediately placed upon such calendar, on the filing of the return of the ap-

The People *v.* Gardner.

praisers to the appeal, does not appear. If such be the practice, such allegation implies that no return had been made. We can intend nothing on the subject; and the relator, whose duty it was to show affirmatively that the proceedings of the canal board were duly authorized, has not shown how the facts were. Upon this ground, I think the mandamus might have been denied. But this is perhaps a matter of nice formality; and a decision on this ground would not dispose of the case upon its merits. I will, then, consider the more substantial ground upon which I think the judgment below should be reversed.

The statute (ch. 752 of 1849, § 4, p. 513), prescribing the duties of the canal board, provides as follows: "Whenever the canal board shall, upon the hearing of any appeal from the award of the canal appraisers, reverse or modify such award, *they shall state in the resolution or order relating to said appeal the grounds of such reversal or modification, and how much, if any, such award is increased or diminished.*"

Confessedly, upon its face, the resolution passed by the canal board, December 29, 1859, in respect to the claim and award of the relator, does not comply with this statute. It simply increases such award by adding thereto the sum of $4,010, making it $12,053.35. It specifies no ground for such increase or modification. It is claimed that compliance with this provision of the statute is unnecessary; and upon the ground that it is merely directory, and not imperative. I cannot think that the provision, requiring the canal board to specify the grounds of their decision in the resolution modifying an appraisement of the canal appraisers under the section above mentioned, can properly be regarded as merely directory. It seems to me that it is matter of substance, and essential to the validity of any decision of the board in such cases. Such was, doubtless, the intent of the legislature. The language is positive and peremptory. It is, "they *shall state in the resolution* or order the *grounds of such reversal or modification.*" Such statement is an essential and indispensable part of the order or resolution. The legislature has pre-

scribed the form of the order in such case. It has prescribed the mode in which the canal board shall act, the form of its judgment. The board has no power to give any other judgment, or a judgment, in any other form. It has no general powers. It is specially authorized to affirm, reverse, or modify an award in a particular prescribed way and form. It must comply with the form. It cannot depart from the form specially prescribed and defined. To do so, is to act without authority, and the act is not valid. It is quite like the case of *Davidson* v. *Gill* (1 East., 64). In that case, an act authorized certain magistrates to stop up and alter a ford way, &c. The statute directed that the proceedings should be in a particular form, and prescribed a schedule of forms. The magistrates had not followed the prescribed form; and it was claimed that the statute was simply directory. But Lord KENYON said: "I cannot say that the words are merely directory. Power is given to the magistrates to take away, on certain conditions, a right which the public before enjoyed; and this is to be done in a certain prescribed form." He said, "the words of the act are peremptory, that the forms *shall be used*," &c. Provisions in statutes are in very many cases, and properly, held to be directory. But such provisions are commonly merely incidental or collateral, relating to ministerial or clerical acts, and not to those which pertain to the essence and substance. In *Rex* v. *Loxdale* (1 Burr., 447), Lord MANSFIELD said: "There is a known distinction between circumstances which are of the *essence* of a thing required to be done by an act of parliament, and clauses merely directory." In *Marchant* v. *Langworthy* (6 Hill, 646), it was held, in accordance with this distinction, that a provision of the statute requiring the clerk of the town to give notice of the annual meeting was merely directory. In *The People* v. *Allen* (6 Wend., 486), where the statute required the commanding officer of a brigade to appoint a brigade court-martial on or before the first day of June in each year—held, that the time was not an essential part of the provision, and the statute was directory. So in *ex parte Heath* (3 Hill, 43), *The People* v. *Holley*

The People *v.* Gardner.

(12 Wend., 481), and *Jackson* v. *Young*, (8 Cow.), where the statute required certain acts to be done within a certain time — held, that the time was not essential to the validity of the act; and the statute in that particular was directory merely. So in respect to the tax list, directed by the statute to be made out within thirty days after the district meeting. It has been held in several cases that the acts being for the public benefit, and the signing of the warrant but a ministerial duty, the statute in respect to time was merely directory. (*Hovey* v. *Clapp*, 20 Barb., 167; *Gale* v. *Mead*, 2 Denio, 160; *Lee* v. *Parry*, 4 Denio, 125.) In *Striker* v. *Kelly* (7 Hill, 9), the question was considered, among others, whether a resolution for opening a street in New York city was properly passed without calling the ayes and noes; the statute requiring such formality in express words. The statute directed that "all resolutions recommending improvements should be published in all newspapers employed by the common council; and whenever any vote is taken in relation thereto, the ayes and noes shall be called and published in the same manner."

Judge BEARDSLEY considered that this provision was directory only; and with him Judge COWEN concurred. And in respect to the publication in the newspaper, the Chancellor concurred in the view that that portion of the statute was directory in *Wiggin* v. *The Mayor of New York* (9 Paige, 16). But in the case of *Striker*, Judge BRONSON dissented, saying: "The language is *imperative;* the ayes and noes *shall* be called. When the particular mode in which the corporation is to act is thus specially declared by its charter, I think it can only act in the prescribed form. The contrary doctrine wants the sanction of legal authority, and is fraught with the most dangerous consequences. It would place the corporation above the laws." This case was reversed in the Court for the Correction of Errors upon other grounds; and this question was not passed upon (2 Denio, 323); and the point remains undecided. But the views expressed by Judge BRONSON seem to me eminently sound; and they are equally applicable in this case. If the canal board can omit to comply with this

provision of the statute, they will virtually nullify the law; as Judge BRONSON said of the common council of New York; "it would place the board above the laws." It was never the intention of the legislature that the canal board should have power arbitrarily and capriciously to reverse or modify awards. This section was made, most palpably, to prevent such action of the board; and it is the plain duty of the courts to seek to carry out the plain intent of the statute, and avert the mischief it was intended to prevent.

It appears, from the affidavit of the relator, that the resolution in question was passed in his absence, relating to matters within his particular district of the canal, and in respect to which it was his particular duty to watch for and guard the interests of the State: the appeal was not on the calendar of cases to be heard upon appeal; and no special meeting of the canal board for the hearing of appeal cases, according to the regulations of the board, was given. These matters pertain, doubtless, to the practice of the board, and are not subjects of review any more than ordinary questions of regularity in courts of justice. But they do suggest the importance of the statute in question, and vindicate the wisdom of the legislature in its passage; and clearly show that the power of the board should not be enlarged by judicial construction tending to defeat the legislative will, and jeopardize the public interests.

The resolution of the 29th of December, 1859, increasing the award of the relator to $12,053.35, I think, therefore, is clearly invalid, for the non-compliance by the canal board with the statute in question. The resolution passed on the 10th of February, 1860, vacating the former resolution and granting a re-hearing of the appeal, is also invalid. The board could not grant a re-hearing, except in the precise mode specified in the statute (§ 150), and upon an application in writing. This application means an application upon affidavit or petition, showing some mistake or other grounds of error, and made on notice to the opposite party. The order is therefore invalid, as an order granting a re-hearing of a decision properly made upon an appeal. As a resolution, vacating an irregular order, it is

not, perhaps, objectionable. It is at best harmless, and affects no rights of the people or of the relator. It simply removes the irregular order from the record, so as to allow the appeal to be heard upon its merits. It should so be heard, without respect to such order; never having been properly decided if heard.

The judgment below should be reversed.

All the judges were for reversal; and a majority of them concurred in opinion that the statute requiring the canal board to state the grounds for its modifying an award was imperative.

DENIO, J. I assume that the order of the canal board of the 29th December, 1859, was legally valid, although it did not set forth, as the act requires, the grounds of the change which the board had made in the award of the canal appraisers. I am inclined to think the provision in that respect may be regarded as directory, as was held by the Supreme Court. But the board had a clear right, under the act of 1840 (ch. 201), to grant one rehearing, and it was their duty to do so, if, in their judgment, the justice of the case required it. The board did grant a rehearing by its order of the 10th January, 1860, and that order was a complete answer to the application for a mandamus to carry into effect the award of damages made by the board on the 29th December preceding, unless it was void. It is alleged that it was void for several reasons, the first of which is that it professes to vacate the former .resolution upon an *ex parte* application and before the party claiming damages had been heard. The analogy between these proceedings and suits and proceedings in courts of law is not very close; but some general principles are, no doubt, applicable to both, and it would be clearly illegal to finally annul a determination made upon a hearing of the parties, under which one had acquired rights, without affording him an opportunity to be heard upon the question. But such was not the course proposed by the board. It had been suggested by the canal commissioner, whose duty it was to attend to the

interest of the State in the matter, that justice required a further examination of the case; and the effect of their determination was that an opportunity should be afforded for such further examination, and of this Mr. Barnes was to have ample notice by the service upon him of a copy of the order. The statute does not require that the party who had prevailed upon the former hearing should have notice of the application for a rehearing; and there is nothing in the nature of the case making it indispensable that such notice should be given. If he has a full opportunity to appear and contest the matter on the further hearing, he has no ground for complaint. Besides, it is to be intended that the act has imposed all the conditions to obtain a rehearing which the legislature thought it suitable to impose. It declares that there shall be an application, and that it shall be in writing. Of course, the only party to whom an application can be addressed is the board. Then the application must be made in sixty days after the adjudication which is sought to be reconsidered. If, besides these formalities, it had been intended that notice should be given to the other party, it is to be presumed that it would have been so specified. If there was an error in declaring the former resolution vacated before the rehearing took place, still that would not prevent the rehearing, but would be in furtherance of it. So far as the order professed to set aside what had been done, it might be void, and yet the mandate for a rehearing, being within the competency of the board, might be legal and valid. But I think the *vacatur* was right. The nature of a rehearing, stripped of all technicalities, is a proceeding by which the complaint, or claim for the original adjudication, is to be again heard and considered. The matter, in such a case, is to be taken up anew, without prejudice on account of the former order. The order is in the nature of an award of a new trial in an action at law, which presupposes that the original trial has been vacated and annulled.

But the objection most strongly urged to prove the order for a rehearing void is, that there was no written application. My opinion is, that the board was competent to waive that

formality, and that, by making an order in writing vacating the former order and directing a rehearing, the board did effectually waive all objections to the manner in which the question was brought before them. The application was required to be made to the board, and not to the opposite party. The motive for requiring a written application, and for limiting the time within which it should be made, was, doubtless, to enable the board, the public officers and the claimant to know when the original adjudication had become perfect and absolute. It was important, after the sixty days mentioned in the act had elapsed without any rehearing being granted, that there should be some authentic means of determining whether an application had been made within that time. If an oral application should have been made, more or less uncertainty would have arisen as to its existence, which would not be likely to be the case if a written application was the only manner in which the motion could be made. But these reasons have no force where the board has entertained the application, and has actually made an order in writing for a rehearing within the sixty days. No better evidence could be needed that the party seeking a rehearing had applied to the board for that purpose, than a formal order granting the application and directing a rehearing entered in their minutes. Again, the resolution was reduced to writing and presented to the board by the canal commissioner who applied to open the adjudication. It set forth the order which he asked for, and recited the reasons why it should be granted. It was in itself an application in writing, and would alone be a sufficient answer to the objection.

These proceedings are administrative in their character, and the statutes regulating them should be construed with liberality. I am satisfied that an order for a rehearing, made in the manner disclosed in these papers, entered within the sixty days, accomplishes all the objects of a written application, so far as the party opposing the rehearing is concerned.

I am, therefore, of opinion that the judgment of the Supreme Court should be reversed, with costs, and that judgment

should be rendered in favor of the canal commissioner against whom the alternative mandamus was sued out.

ALLEN, J., concurred in this opinion; and a majority of the judges agreed that the offering of the resolution by Mr. Gardner was a sufficient application in writing.

> Judgment reversed, and judgment for the
> defendant ordered.