*In re* CITY OF ROCHESTER.

*In re* WARRANT.

(*Supreme Court, Special Term, Monroe County.*  May 3, 1890.)

1. MUNICIPAL CORPORATIONS—PUBLIC PARKS—MANDATORY STATUTE.
    Laws N. Y. 1888, c. 193, § 4, providing that, before land can be taken by the city of Rochester for park purposes, the common council "shall," at its next regular meeting after the map of the land to be taken has been filed as required by section 3, "by resolution declare that the city intends to take" the land, is mandatory, and the power to pass such resolution expires with the next regular meeting held after the filing of the map.

2. SAME—COMMISSIONERS—RESIDENTS OF CITY.
    Residents of a city seeking to condemn land for park purposes are disqualified by reason of interest to serve as commissioners to appraise the land to be taken.

Application by the city of Rochester to acquire land of John W. Warrant. The said Warrant, respondent, now moves to vacate an order by which commissioners were appointed to make an appraisement of his land.

*F. G. Hone,* for the City.   *J. L. Angle,* for respondent.

RUMSEY, J.   This proceeding was taken under the authority of chapter 193 of the Laws of 1888, to acquire *in invitum* the lands of the respondent for park purposes by the park commission of the city of Rochester, created by that act.   For the purposes of this motion it will be assumed that the act is constitutional, although, if necessary, a strong argument might be made against it.   The act provides that, before any proceedings shall be taken for acquiring title to real estate, the commissioners shall cause to be filed a map of the land which they propose to take.   Section 3.   It is then prescribed that upon filing the map "the common council shall, at the next regular meeting of the common council thereafter, by resolution, declare that the city intends to take" the land, and shall give notice of such intention by publishing the same for 20 days.   Section 4.   The next section provides that "at the next regular meeting of the common council, after the expiration of said publication," a notice shall be published for 10 days that the city will apply at the place therein to be named to the supreme court for the appointment of three commissioners to appraise the lands.   No personal notice to the owners of the application for appointment of commissioners is required.   The report of the commissioners, when made, is to be filed in the office of the clerk of Monroe county, and a notice of the filing and of the time and place of a motion to confirm the report shall be published, and on the day for which the notice is given the court is required to confirm the report upon proof of the publication. As has been said, the statute makes no provision for personal notice on any one.   Neither does it provide any protection for the rights of infants or incompetent persons, nor is any power given to the court to appoint any one to protect their interests.   In its whole scope the proceeding is exceedingly summary.

It appears by the statute, also, that the compensation is to be fixed by the commissioners, and there is no appeal from their action, and no discretion given by the act to the court to set it aside for mere mistake or error, or because the award is too small.   The amount of compensation is therefore almost entirely in the discretion of the commissioners.   The purchase price of the lands is to be paid by the sale of bonds of the city, which, with the interest, are to be finally liquidated by taxation.   The tax-payers of the city, present and to come, have therefore a direct personal interest in making the compensation to be awarded to land-owners as small as possible.   The commissioners appointed are citizens of the city, and it is claimed that the order is irregular for that reason.

But two objections will be considered: The first one is that the court did not acquire jurisdiction to make the order.   It appears that the map was filed

on the 10th day of June, 1889, and that the next regular meeting thereafter was held on June 11th, but the resolution that the city intends to take the lands was not passed until October 29, 1889. The point is made that the requirement of the statute that the resolution of intention to take the lands shall be passed at the next regular meeting after the filing of the map is mandatory, and that the power to pass the resolution expired with that meeting. It has come to be a maxim of the jurisprudence of this state that, when lands are taken in pursuance of a statute authority in derogation of the common law, every requirement of the statute having the semblance of benefit to the owner must be strictly complied with. *Sharp* v. *Speir*, 4 Hill, 76; *Sharp* v. *Johnson*, Id. 92; *Newell* v. *Wheeler*, 48 N. Y. 486. For many years, as the occasions for depriving citizens of their property by summary and unusual proceedings have increased, the courts have been inclined to insist upon the rule above stated with much strictness. They do not assume to say that any requirement of the legislature in such proceedings is immaterial, or that the courts can say that any course of proceeding, other than that prescribed by law, will do just as well. *Powell* v. *Tuttle*, 3 N. Y. 396, 405; *People* v. *Whitney's Point*, 32 Hun, 511; *In re Emigrant, etc., Bank*, 75 N. Y. 388. All the prescribed prerequisites to the exercise of the power to take the property of the citizen *in invitum* must be strictly complied with. *In re City of Buffalo*, 78 N. Y. 362. It was said by BRONSON, J., in *Striker* v. *Kelly*, 7 Hill, 9, that when the particular mode in which the corporation was to act was specially declared by its charter, it can only act in the prescribed form.

The contrary doctrine wants the sanction of legal authority, and is fraught with dangerous consequences. This language was used in a dissenting opinion, it is true, but it has received the approval of at least one of the judges of the court of appeals. *People* v. *Gardner*, 24 N. Y. 583, 587. The language of the statute is imperative: "The common council shall, at the next regular meeting." They "shall give notice" by publishing for 20 days. Both requirements are in the same section. Confessedly, the requirement to publish for 20 days is mandatory. But the words in which that requirement is made are precisely the same as those which direct the passage of the resolution. Generally, and in its primary meaning, the word "shall" signifies a command and not a suggestion. The word is imperative. It leaves no discretion. They were just as much bound to pass the resolution as they were to publish the notice. The requirement to pass it at the next regular meeting after the filing of the map was also, I think, peremptory and mandatory. Those people whose land was included in the map were entitled to know whether it was to be taken. They could only ascertain by learning whether the common council passed the resolution. Either the common council must act at the time prescribed, or they might postpone action as long as they chose, though it were 20 years. It is plain that those people whose lands are liable to be taken should not be required to watch and wait for the pleasure of the common council for their notice, but are entitled to have the matter disposed of at the time fixed by the statute. It is quite true that certain cases are to be found in which it has been held that the time when an act is to be done, although fixed by the statute, may be directory; but in those cases the time was merely formal, and, as was said by Judge MARCY, there was nothing in the nature of the power, or in the manner of giving it, that justifies the inference that the time was a limitation of the power. These cases are cited in *People* v. *Gardner, supra*. It cannot be denied that here the time was prescribed at which the common council must act, and that it was important to the landowner to know whether the common council did act, without watching each recurring meeting for all time. The time of action was, I think, essential, and not merely incidental. It is not to be denied that in many instances, in the face of a supposed public necessity, there is much looseness in dealing with rights of property. It is quite important that the few safeguards thrown

by law around such proceedings should be strictly insisted upon. The courts are becoming much more particular in this matter as the necessity for such strictness is seen to increase. Within the rules of the later cases I think the specification that the common council should act at the next regular meeting after the map was filed was imperative, and they had no power to act afterwards. *People* v. *Whitney's Point*, 32 Hun, 511; *Semon* v. *City of Trenton,* 47 N. J. Law, 489, 4 Atl. Rep. 312.

Another serious objection to the order appointing commissioners is that they appear to be residents of the city of Rochester. It is quite clear, I think, that they were incompetent to serve as commissioners. There was no doubt that they would have been incompetent at common law. Co. Litt. 157, *a*, *b; Wood* v. *Stoddard,* 2 Johns. 195. The fact that the legislature struck out the word "disinterested" from the statute did not make inhabitants of the city competent who were not competent before. There is no statute which I can find which removes the incompetency. *Diveny* v. *City of Elmira,* 51 N. Y. 506. The fact that the commissioners are not shown to be tax-payers is not material. The cases cited above show that at common law the incompetency existed because of residence within the locality. There may be an interest not created by financial responsibility which the law recognizes as sufficient to disqualify. Such an interest arises when an inhabitant of a city is put to pass, in a court of record, upon a question between the city and a third person. It is removed as to jurors by statute, but that statute does not apply to these cases. For both the above reasons this order must be vacated. It is not necessary to discuss the constitutionality of the act, and I do not pass upon it, although it was argued.